Danny Joe DAUGHERTY, Appellant,

v.

STATE of Texas, State.

No. 2–81–339–CR.

Court of Appeals of Texas, Fort Worth.

May 18, 1983.

Rehearing Denied Aug. 17, 1983.

Lee Ann Dauphinot, Fort Worth, for appellant.

Tim Curry Dist. Atty., Hamilton O. Barksdale Asst. Dist. Atty., for State.

Before FENDER, C.J., and BURDOCK and SPURLOCK, JJ.

## OPINION

SPURLOCK, Justice.

Appellant, Danny Joe Daugherty, was convicted by a jury of burglary of a habitation. *See* V.T.C.A. Penal Code, sec. 30.02. Daugherty was found to have committed two prior felonies, both of which were utilized by the State for enhancement purposes, and the trial court sentenced him to life imprisonment.

We affirm.

Daugherty raises sixteen grounds of error. Because he challenges the sufficiency of the evidence, a brief recitation of the facts is necessary. Afterwards, each ground of error will be addressed in turn; we shall not list them all here.

On September 15, 1980, the victim's apartment was burglarized. Upon his arrival at his apartment, the victim found his door latched from the inside by a security chain. The apartment maintenance man was summoned, as were the police. The maintenance man forced the door open. There was a hole in the ceiling of a closet within the apartment, and the victim noticed that a Ruger .22 Magnum caliber pistol and desk calculator were missing. Upon their arrival, the police were told of the foregoing, and that the handgun had been loaded when the victim last handled it. Police officers noted that the closet ceiling had been penetrated from above, and that a chair had been placed in the closet to assist the burglar in exiting via the hole. The apartments were "sealed off", and other possible exits from the attic were checked, as were all of the vacant apartments. Officers noted that a hole had been cut into the ceiling of an adjoining apartment (later identified as that of Daugherty), but could not tell how long ago this had been done. One officer obtained a passkey from the maintenance man. He then began knocking on the doors of the occupied apartments. He entered those apartments from which he received no response to his knocking within a reasonable period of time, checking for suspicious persons, and inquired of those residents whom he encountered whether they had witnessed any suspicious activity. An officer encountered Daugherty in his apartment during this search. The officer recalled that Daugherty appeared to have been asleep. Daugherty consented to the officer's request to look for this burglar, who might have dropped into the apartment unnoticed. The officer took a quick look through the apartment, including the bedroom and closet, and did not see anything from which he could conclude that Daugherty was the burglar. However, the officer was looking for a person, not the fruits of the crime. Later, after Daugherty's arrest, the same officer did observe evidence indicating that Daugherty had burgled the victim's apartment. After checking for the presence of the burglar, and determining that no one was hiding within the building, the officers prepared to leave the scene.

As two other officers walked past Daugherty's apartment, they noticed a small marihuana plant in the bedroom window sill. These two officers then knocked on Daugherty's door. One of the officers was in uniform, the other in plain clothes. Daugherty answered, and an officer stated that he would like to talk to him. Daugherty stepped backwards into the living room and opened the door wider, and the two officers entered his apartment. The plainclothes-

man then presented his identification, and said that he was there to talk with Daugherty about the marihuana plant in the window. Daugherty said words to the effect of, "The plant's in here", and started toward the bedroom. The officers followed, and examined the plant. The plainclothesman did not consider that the plant had enough leaves upon it to constitute a usable quantity of the drug. The officer asked if the plant was Daugherty's. He replied that it was. They then asked him if he wanted to dispose of the plant. Daugherty then pulled the plant from the pot and flushed the plant down the commode in an adjacent bathroom. As they left the bedroom, one of the officers noticed fiberglass insulation on the floor and then looked into the open closet and observed that there was a square cut in the ceiling of that closet. The officer saw more insulation on the floor inside the closet. The officer also saw a pair of tennis shoes just outside the closet, with a piece of insulation on the shoelaces. Meanwhile, the other officer saw a calculator on the nightstand, and pointed it out to the first officer, who then also noticed a white T-shirt with bits of insulation on it on a table. The shirt was wet from perspiration. Daugherty was then advised of his constitutional and statutory rights, because at that point Daugherty had become a suspect in the burglary.

The second officer then made a standard "perimeter search" for weapons in the immediate area where Daugherty was and discovered a Ruger handgun. Daugherty was then formally arrested, and handcuffed before the three men left Daugherty's apartment. After his arrest, Daugherty was taken to the Euless police station, where he waived his rights and gave a voluntary written statement. This statement relates the details of the burglary of the victim's apartment, admission of the officers into Daugherty's apartment to discuss the marihuana plant, the destruction of that plant, and the details surrounding Daugherty's arrest, as outlined above.

▆ Daugherty's first ground of error alleges that the trial court erred in denying his motion to discover criminal records of all witnesses, except such records as might be in the possession of the prosecutor. Daugherty asserts that this ruling effectively limited his discovery to such records as were in the prosecutor's possession. Of the witnesses called by the State, one was the victim, one the court investigator, and the rest were police officers. No evidence obtained by the prosecutor was withheld from the defense, whether favorable and material or not. There is nothing in the record to indicate that the prosecution was aware of statements, in possession of testimony, or aware of prior criminal records of its witnesses, which, if made available to Daugherty, could have affected the outcome of his trial. Daugherty did not indicate that he had knowledge of a particular witnesses' prior criminal record which could have been material in determining Daugherty's guilt or innocence. Nor did he show the court that the State was aware of, or had possession of any witnesses' prior criminal record. The State is not held responsible for information concerning a witnesses' prior criminal record when that information is not in the State's possession. *See Thompson v. State*, 612 S.W.2d 925, 928 (Tex.Cr.App.1981). We find no abuse of discretion by the trial court in its ruling and overrule ground of error one.

Ground of error two asserts that the trial court erred in denying Daugherty's motion to quash the indictment. The indictment alleges that Daugherty did "intentionally and knowingly, without the effective consent of (the victim), the owner thereof, enter a habitation with intent · to commit theft." The victim testified that he had moved into the apartment two days before the burglary, but that his name was not on the lease. However, the victim testified that he was the co-renter of the apartment and shared its care, custody, control and management.

" 'Owner' means a person who has title to the property, possession of the property, whether lawful or not, to a greater right to possession of the property than the actor." V.T.C.A.Penal Code, sec. 1.07(a) (24).

" 'Possession' means actual care, custody, control, or management." V.T.C.A.Penal Code, sec. 1.07(a)(28).

The State is not required to specify in an indictment which type of ownership theory it will rely upon at trial, as the term "owner" is statutorily defined. *See Thomas v. State,* 621 S.W.2d 158, 161–162 (Tex.Cr.App.1981); and V.A.C.C.P., art. 21.-12. The instant indictment does not deprive Daugherty of notice in sufficient detail to enable him to prepare his defense. Ground of error two is overruled.

His third ground of error states that the trial court erred by denying Daugherty's motion for discovery, which would have required the State to trace the ownership history of the gun taken in the burglary. The victim testified that the gun given him by police was the same gun which he possessed prior to the burglary. Daugherty presented no evidence to prove his right to possession of the pistol, or to explain his possession of this gun at the time of his arrest, or to challenge the victim's identification of this item as stolen from (and returned to) him. Daugherty takes the position that there was no showing that the gun turned over to the victim by police actually belonged to the victim. We find that the victim's identification of his property was sufficient and need not have been more specific. *See Pearson v. State,* 649 S.W.2d 786 (Tex.App.—Fort Worth, 1983, no writ).

Grounds of error four through seven were briefed together by both counsel, and we shall treat them likewise. Daugherty contends on these grounds of error that:

4. There was insufficient evidence to sustain a conviction for burglary of a habitation;

5. There was no evidence to sustain Appellant's conviction for burglary of a habitation;

6. There was no evidence that the gun belonged to the complaining witness; and,

7. There was no evidence that the calculator belonged to the complaining witness.

Daugherty correctly notes that when the State attempts to sustain its burden of proof in a burglary case by showing that the accused is in unexplained possession of recently stolen property, the State must show that such possession is personal, recent, unexplained and must involve a distinct and conscious assertion of right to the property by the accused. *Rodriguez v. State,* 549 S.W.2d 747, 749 (Tex.Cr.App. 1977).

The evidence adduced at trial was sufficient to enable the jury to make the above delineated determinations, and they obviously did so. Daugherty's brief again posits, as it did in ground of error three above, that there was no showing that the calculator and Ruger handgun found in Daugherty's bedroom were, in fact, the same and identical items stolen from the victim. Daugherty asserts that the trial court should have granted him an order requiring that ownership of the handgun be traced. We again draw his attention to our discussion of the issue of the specificity required when a victim testifies concerning the identity of items stolen from him and returned to him by police from the possession of the accused in *Pearson v. State, supra.* We disagree with his contention that there was no evidence that the property found in Daugherty's possession was the same property stolen from the victim.

Daugherty further maintains that the State did not show, although required to do so, that there was an affirmative link connecting him with the offense. He asserts that the testimony establishes that a third person, a female, shared, or had access to, his apartment, and, that the State showed "merely that the apartment and/or someone who had access to the apartment was involved in the burglary", and did not establish "credible proof beyond any reasonable doubt that the accused himself had personal possession and had asserted a distinct and conscious right to the stolen property, knowing it was stolen". We disagree. Daugherty seems to forget that an extrajudicial confession, which is found by the trial

court to be in compliance with V.A.C.C.P., art. 38.22, and which is corroborated, either by other testimony or proof of the corpus delicti of the offense, operates as direct evidence. *Jackson v. State,* 548 S.W.2d 685, 695 (Tex.Cr.App.1977).

Daugherty gave such a confession, which was found to be admissible by the court. Police investigators testified that the victim's apartment had been burgled by a person who entered and exited through a hole knocked in the ceiling of a bedroom closet. This person exited the attic of the building in some way, taking with him a calculator and a Ruger .22 Magnum caliber handgun. Officers discovered a hole cut into the ceiling of a closet in Daugherty's bedroom, insulation both on the floor of the closet and on items of clothing found in Daugherty's apartment, and a calculator and Ruger .22 Magnum caliber handgun in Daugherty's bedroom. These facts, coupled with Daugherty's voluntary confession, constitute direct evidence, sufficient to support a rational trier of facts, in finding, beyond a reasonable doubt, each essential element of the offense for which Daugherty was convicted. *See Re Winship,* 397 U.S. 358, 365, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). This was the jury's finding, in the face of Daugherty's assertion at trial that it was his "girlfriend" who burgled the victim's apartment and evidence that the tennis shoes found did not match his shoe size and were "a tight fit", and we will not disturb the jury's determination of the facts on appeal. Grounds of error four through seven are overruled.

▇▇▇▇ Ground of error eight claims that the trial court erred in admitting Daugherty's written statement, because it was the fruit of an illegal arrest. Daugherty also argues, in ground of error thirteen, that the police illegally searched his apartment, as they had neither a warrant nor consent to do so. He takes the position that he was arrested as a result of the illegal search,

and that his statement was, in turn, the fruit of this illegal arrest. The State concedes that, initially, they had no probable cause to arrest Daugherty or to search his apartment. However, they assert that the officers did have reason to initiate a further investigation after they observed a marihuana plant growing in plain view inside of Daugherty's apartment. Therefore, they knocked upon Daugherty's door, and asked him to talk with them about the marihuana plant he was cultivating. "Officers must have some reasonable leeway to investigate into criminal activity absent probable cause for an arrest or search. (Citations omitted)." *George v. State,* 509 S.W.2d 347, 348 (Tex.Cr.App.1974). The State further asserts that Daugherty gave his consent to their entry into his apartment. We agree. The question of whether consent to a search was voluntary is determined from the totality of all the circumstances; and it is not necessary that the State establish that the person who consented to the search knew that he had a right to refuse such consent, or that his consent constituted a knowing and intelligent waiver of his 4th Amendment rights. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). However, the State must show that consent was, in fact, freely and voluntarily given, and not the result of official coercion. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791–1792, 20 L.Ed.2d 797 (1968). We find that the record reflects that the State met its burdens, as outlined above, and we agree that Daugherty gave his consent to the officer's entry into his apartment. Once there, the evidence which led them to arrest Daugherty was in plain view.

▇▇▇▇ It is well settled that evidence of a possible criminal offense, may be seized, and used as the basis for a warrantless arrest, when the officer is lawfully in a position or place from which (s)he may view that evidence. As the arrest and "search"[1]

---

1. For purposes of ease of language and clarity, we adopt the appellant's use of the word "search" to describe the entry of the two officers into his apartment, and subsequent sighting and seizure of evidence of the crime by them. However, we decline to hold that their actions in investigating a possible violation of

were valid and lawful, there can be no question of whether Daugherty's confession was the product or fruit of an illegal "search" and arrest. Grounds of error eight and thirteen are thereby overruled.

■ Daugherty's ninth and fifteenth grounds of error declare that the trial court erred in admitting his confession into evidence, because it was not freely and voluntarily made. The trial court held a so-called "Jackson v. Denno" hearing in compliance with V.A.C.C.P. art. 38.22, and found that Daugherty's statement was made voluntarily. As in *Burks v. State,* 583 S.W.2d 389, 392–93 (Tex.Cr.App.1979), the appellant's testimony concerning the circumstances under which he made the confession was disputed by the police; this gave rise to a question or questions of fact which the trial court, as the trier of fact, resolved against appellant in his findings of fact and conclusions of law. As in *Burks, supra,* these findings are supported by evidence adduced at the hearing, and we likewise decline to disturb the court's ruling on appeal. "At a hearing on the voluntariness of a confession, the trial judge, ... is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. (Citations omitted.) Here, the trial court resolved the issues of fact against appellant, and we hold that the trial court's findings are well supported by the evidence adduced at the hearing, and the totality of the circumstances they present." *Vigneault v. State,* 600 S.W.2d 318, 329 (Tex.Cr.App.1980). *See also Green v. State,* 615 S.W.2d 700, 707 (Tex.Cr.App.1980). For the reasons stated, grounds of error nine and fifteen are hereby overruled.

■ Ground of error ten argues that the trial court erred by permitting the State to characterize Daugherty as a "3-time burglar" and a "4-time ex-convict", maintaining that such references constitute instances of prosecutorial misconduct. The State points out, correctly, that in neither appel-

lant's original nor amended brief does appellant cite a page number or portion of the record where the alleged error is supposed to have occurred. We have examined the letter briefs permitted under our rules, up to the date of oral argument of the case, and observe that this deficiency was not rectified in that permitted manner.

Nowhere, simply nowhere, does the appellant call our attention to any portion of the record or refer to any page number where he contends [that an error was committed]. Such contention does not comport with the requirements of Article 40.09, sec. 9, V.A.C.C.P. Nothing is presented for review. *Lacy v. State,* 450 S.W.2d 640 (Tex.Cr.App.1970). This court with its tremendous caseload should not be expected to leaf through a voluminous record hoping to find the matter raised by appellant and then speculate whether it is that part of the record to which appellant had reference.[2] *Cook v. State,* 611 S.W.2d 83, 87 (Tex.Cr.App. 1981). We, likewise, hold that in this instance nothing has been presented for review. Ground of error ten is overruled.

The eleventh ground of error proposes that the trial court erred in refusing to declare a mistrial, when a State's witness, while reading Daugherty's confession, read a sentence in which Daugherty mentioned the fact that he was then on parole, e.g.: "I am on parole now and want to make this statement to show that I am trying to cooperate." Daugherty characterizes this as improperly permitting the jury to hear testimony concerning an extraneous offense.

■ However, the statement complained of had already been admitted into evidence. The objection made at that time was grounded upon a different basis than that one sentence of the statement constituted reference to an extraneous offense; instead, it referred the trial court's atten-

our narcotics law constituted a "search" as that term is ordinarily used.

2. In *Cook, supra,* the State provided the court with a citation to the record where it presumed that the appellant perceived error. This was so in the instant case as well.

tion back to a previous objection on the ground that the statement was involuntary and the result of coercion or promise of gain or favor by police. That motion was made during a *"Denno"* type hearing, and was overruled. While it is true that counsel objected to the portion of the statement complained of after it was read aloud by the State's witness on the basis ·that it constituted an improper reference to an extraneous offense, the objection was not timely, as the confession had already been admitted into evidence as exhibit "D". The alleged error has therefore not been preserved for review. Ground of error eleven is overruled.

Ground of error twelve submits that the trial court erred in allowing the State to inform the jury on voir dire that Daugherty had previously been convicted of a felony. Specifically, Daugherty complains of the following statements by the prosecutor upon voir dire:

> I need to ask you one other abstract question: Under certain circumstances, the legislature has provided that the penalty range in a first degree burglary of a habitation, that if a person has been previously convicted, the punishment range is from 15 to 99 years or life.

> Is there anyone here who could not follow that law if it were applicable in a given case? Changing the minimum punishment from five to 15 years, but leaving the range of punishment from 15 to life?

> MR. BANKSTON: Excuse me, Mr. Pipes.

> * * * (Objection by counsel and its overruling by court).

> MR. PIPES: Anybody still remember the question? The question is, and I would like for a show of hands if there is—I believe that I asked you, and the legislature provides that in a—in a case at the penalty phase of the trial where it is shown that a person has been previously convicted of a felony offense, the legislature provides for a different penalty in that instance and that penalty would be from 15 to 99 years or life.

> Now, is there anyone who could not follow that law if that situation arose?

> I take it by your silence and your—the fact that there are no hands held up that that would—if you were confronted with that situation, you could follow the law in fixing punishment in that sort of a case. Okay.

█ We find that the complained of voir dire of the jury was not error, was in compliance with V.A.C.C.P. art. 36.01(1), and was authorized by V.A.C.C.P. art. 35.-16(b)(3). This issue has been addressed in *Davis v. State,* 630 S.W.2d 769 (Tex.Cr.App. 1982), and we find the following statement by Justice Warren to be dispositive of the instant appeal:

> The next ground of error asserts that the trial court erred in allowing the prosecutor to voir dire the jury on the range of punishment for a second offender because it indirectly informed the jury that appellant was previously convicted. Appellant also claims that this procedure violated article 36.01(1) of the Texas Code of Criminal Procedure. There is no contention that the enhancement paragraph was read to the jury before the punishment stage of the trial, or that the jury was informed that appellant was a second offender.

> In *Bevill v. State,* 573 S.W.2d 781, 783 (Tex.Cr.App.1978) (reversed on other grounds), the Texas Court of Criminal Appeals stated that allowing counsel to explain the applicable ranges of punishment is the only way that both parties can intelligently use their peremptory challenges when the jury is to assess punishment. Noting that the jury can be informed generally of the applicable punishment without having to read the precise allegations for enhancement, the court concluded that Article 36.01(1) would not be violated. *See* also *Martinez v. State,* 588 S.W.2d 954 (Tex.Cr.App. 1979).

> This ground of error is overruled.

*Davis,* 630 S.W.2d at 772.

Ground of error twelve is therefore overruled.

■ Daugherty's fourteenth ground of error takes the position that the trial court erred by sustaining the State's objection to his attempt to impeach his own witness, a police officer whom he called to testify. The testimony in question concerned whether Sergeant Davis knew in which specific apartment (later shown to be that of the accused) a hole to the attic had been discovered by other officers. Here the previous testimony contained expressions of "did they tell you . . . ?" and "I believe . . . yeah . . . I'm not sure". At trial the responses to similar questions were "where did I think it was?", "I had no idea personally", and "the officers advised me". V.A.C.C.P. art. 38.28 requires that testimony of one's own witness must be injurious to one's cause before one is allowed to attack the testimony. One must also show that the testimony operates to one's surprise in order to be permitted to attack that testimony in the face of a proper objection. "It is not sufficient to justify impeachment that the witness merely fails to testify as expected or to remember facts favorable to the party calling the witness. (Citations omitted)." *Lewis v. State,* 593 S.W.2d 704, 705, 706 (Tex.Cr.App.1980); also holding that a mere failure of expected proof does not constitute injury for the purposes of art. 38.28.

It is simply not sufficient to justify impeachment that the witness merely fails to testify as expected or to remember facts favorable to the party calling the witness. *Zanders v. State,* 480 S.W.2d 708 (Tex.Cr.App.1972); *Wood v. State* [511 S.W.2d 37, Tex.Cr.App.], supra. It is this point which is not understood by many lawyers. It should also be remembered that foreknowledge that a witness will testify as he does precludes impeachment though testimony given is decidedly adverse on a vital issue. *Wall v. State,* 417 S.W.2d 59 (Tex.Cr.App.1967). The purpose of the rule requiring a showing of surprise is to prevent a party from calling a witness who the party knows will testify adversely to such party and then, under the guise of impeachment or cross-examination, present before the jury evidence which the party would have hoped to elicit from the adverse witness. *Cherb v. State,* 472 S.W.2d 273 (Tex.Cr.App.1971); *Webb v. State,* 503 S.W.2d 799 (Tex.Cr.App.1974). *Brown v. State,* 523 S.W.2d 238, 242 (Tex.Cr.App.1975). We have reviewed the record, and hold that the trial court properly sustained the State's objection to Daugherty's attempt to impeach Sergeant Davis. Ground of error fourteen is therefore overruled.

The sixteenth, and final, ground of alleged error asserts that no evidence was adduced at trial to show that Daugherty entered the victim's habitation without the owner's consent. Daugherty is able to make this assertion because the lease document pertaining to the victim's apartment lists only the victim's roommate's name. This roommate, who was a co-worker of the victim, did not testify; therefore there is no direct testimony that Daugherty did not have his consent to enter the apartment in question. The victim testified that Daugherty did not have his permission to enter, and when he was asked if his roommate gave permission for Daugherty to enter the apartment (presumably by knocking a hole in the ceiling), the victim replied, "Not to my knowledge". Daugherty argues that if the roommate had, in fact, given such permission, then the case should properly have been tried as a theft rather than as a burglary, and also that the State failed to meet its burden to show lack of effective consent.

■ We observe that the lack of consent required to be proven could have been better developed. However, we note that "proof of lack of consent to the entry and taking of personal property in prosecutions for burglary with intent to commit theft or theft may be made by circumstantial evidence the same as any other issue in a criminal case may be proved by circumstantial evidence." *Taylor v. State,* 508 S.W.2d 393, 397 (Tex.Cr.App.1974). In our discussion of grounds of error four through seven, we held that Daugherty's confession constitutes direct evidence. In that confession, Daugherty admits that he entered the victim's apartment through a hole he made in

the ceiling. Neither of the occupants of the apartment were home at the time of Daugherty's visitation. They rode to work together and returned together. Neither of them knew Daugherty. Such evidence, considered with the other circumstances proven, amply supports a conclusion of lack of effective consent to Daugherty's entry on the part of the jury. *See Kirvin v. State,* 575 S.W.2d 301, 303 (Tex.Cr.App.1978). Ground of error sixteen is overruled.

We affirm.