Eva Barrett LOTT, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–82–0707–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 31, 1985.

Maria Elena Castellanos, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., J. Harvey Hudson, Jim Lavine, Harris County Asst. Dist. Attys., Houston, for appellee.

Before WARREN, BASS and DUGGAN, JJ.

## OPINION

BASS, Justice.

### OPINION ON MOTION FOR REHEARING

The opinion of this court delivered on November 15, 1984, is withdrawn and the following opinion is substituted.

Appellant, Eva Lott, was indicted for the murder of her minor son. A jury found her guilty and the trial court assessed punishment at confinement for 45 years. Appellant brings two grounds of error. In her first, she contends the trial court erred in refusing to grant her motion to suppress evidence because the evidence was tainted by an illegal arrest, and in her second, she argues that there was insufficient evidence.

We affirm.

In April, 1981, a Houston Fire Department paramedic, Michael Augun, and his partner, Keith Dees, proceeded to an apartment two blocks from the firehouse on a call that a baby's heart had stopped beating. Gary Barber answered the door and Augun saw a child lying on its back. The child, Thomas Lott, was badly burned, battered and barely showed any signs of life. Augun started cardiopulmonary resuscitation and transported the child to Twelve Oaks Hospital.

The child was pronounced dead at the hospital. An examination of the body by several physicians, including a pathologist and a radiologist, revealed that the child had sustained numerous injuries, including the following: hair pulled from his head; bruises to the head and face; the left eye was bruised and swollen; the skull was fractured; the upper lip was torn away; the neck had abrasions or rope burns; first and second degree water burns on his scalp, forehead, eyelids, and the sides of his face; a stab wound on the face; a gaping puncture wound on the left foot; a gaping laceration on his left temple; and, the lower teeth were loose. There were fresh cigarette burns on the chest and left abdomen. The ninth rib had been fractured ten to fourteen days before death. The surface of the scrotum contained one fresh, one healing, and one healed cigarette burn. An incision to the scrotum revealed a massive hemorrhaging that was from two to three days old. The rectum had been forcefully dilated. The anus was surrounded by red friction markings and several strands of human hair were pushed into the anal canal. There had been considerable hemorrhaging of the rectum and the injury was from 24 to 48 hours old. There were parallel scars across his lower legs that were at least one month old. X-ray photographs revealed a swelling of the periosteum or sheath surrounding the bones of Tommy's arms, consistent with trauma inflicted anywhere from five days to several months earlier and the presence of epiphyseal lines in the leg bones, indicating growth arrest and possible malnutrition over a period of months.

Augun contacted the Houston Police Department and reported the incident as a case of child abuse. Juvenile Officers Keller and Coleman responded and went to Twelve Oaks Hospital. There they examined and photographed the child and made notes of the child's abused condition.

Augun arrived back at the fire station and with several other firemen returned to the apartment, where Augun spoke with Barber to get information for his report. Augun had to leave, but Captain Higgins and several other firemen continued to watch the apartment. A short time later, Barber left the apartment and Higgins ordered one of his men to follow him. Meanwhile, Captain Higgins radioed for police assistance and informed them that one of his men was in pursuit of Barber. Officers Rankin and Dielensynder were immediately dispatched to the location. Rankin testified that as he approached Barber's apartment a fireman flagged him down and directed him to another fireman who was holding Barber.

Barber was arrested and placed in the patrol car. Officer Rankin read Barber his *Miranda* rights. At this time Barber told Officers Rankin and Dielensynder: "I didn't do it. Eva did it." In response to an inquiry, Barber identified Eva as the mother of the child.

While Barber was being handcuffed, Officers Paramore, Kay, Keller, and Coleman arrived, and Officer Keller showed the photographs of the boy's body to Officer Rankin and his partner and gave them a verbal description of the body's condition. Officer Rankin and his partner departed with Barber for the police station, and after they had traveled 32 blocks, Barber yelled out, "There's Eva." They stopped the car and determined that the appellant was the mother of the dead child and that she knew Barber. They asked her to accompany them to the police station.

The appellant was read her *Miranda* warnings. Later, she was taken before a magistrate who informed her that she had been accused of murder and advised her of her rights. The magistrate made inquiries of the appellant to make certain that she understood her rights and privileges. She was taken to the Juvenile Division where she again received her *Miranda* warnings and gave a statement.

In appellant's first ground of error, she argues that her warrantless arrest violated article 14.04 of the Texas Code of Criminal Procedure. We find that the statute has two requirements which the state must establish: first, a showing of proba-

ble cause that a person has committed or is about to commit a felony, and second, that such person is about to flee. *Honeycutt v. State*, 499 S.W.2d 662 (Tex.Crim.App.1973).

■ In considering if the state had probable cause to arrest, we must determine whether the officer's knowledge of the facts and circumstances was based upon reasonably trustworthy information which would warrant a reasonable and prudent person in believing that a particular person has committed or is committing a crime. *Hawkins v. State*, 660 S.W.2d 65, 70 (Tex. Crim.App.1983).

■ The Court of Criminal Appeals in *Woodward v. State*, 668 S.W.2d 337, 345 (Tex.Crim.App.1984), held that the sufficiency of probable cause is determined on a case by case basis. Here, Officer Keller went to the hospital and saw the child's body and the abuse he had undergone. While Officer Keller was at the hospital inspecting the child's body and taking photographs, Officer Rankin arrested Barber and placed him in the patrol car. It was then Barber shouted, "I didn't do it; Eva did it." Shortly thereafter, Officer Keller arrived at the scene and gave a verbal description of the child's condition and showed the photographs he had taken to Officer Rankin and his partner. From the photographs and the verbal description, Officer Rankin learned that Thomas Lott had been abused. Upon completion of this briefing, Officer Rankin and his partner transported Barber downtown. During this ride, Barber suddenly yelled out, "There she is," "Eva." The officers saw the appellant walking along a public sidewalk, 32 blocks from home. They stopped the car and asked the appellant if she knew Tommy Lott. The appellant replied, "Yes, that's the name of my son." She was then asked whether she knew the person in the back of the patrol car, and to which she replied, "Yes, that's Gary." Then Barber shouted, "Don't talk to them. Tommy is dead." Upon hearing that her son was dead, the appellant made no verbal or emotional response. According to article 14.04, it was then that the officers needed to have knowledge sufficient to warrant a reasonable and prudent person in believing that appellant had committed, by at least negligent omissions, the felony offense of injury to a child.

Once the appellant admitted that she was the boy's mother, the officers *should* have assumed that she knew of the child's injuries, and if so, she would have committed the offense of "injury to a child," as promulgated in article 22.04 of the Texas Penal Code.

The second element of article 14.04 is the requirement that the suspect is about to flee. In *Hardison v. State*, 597 S.W.2d 355, 357 (Tex.Crim.App.1980), the Court of Criminal Appeals held that a showing that the offender is about to escape is indispensable under article 14.04. *See also King v. State*, 631 S.W.2d 486 (Tex.Crim.App.1982). This requirement was modified in *Fry v. State*, 639 S.W.2d 463 (Tex.Crim.App.1982), where the Court of Criminal Appeals said:

> We hold Article 14.04 (V.A.C.C.P.) does not require a showing that the offender in fact was about to escape, nor does it require a showing that there in fact was no time to procure a warrant. *The statute merely requires a showing that the officer was acting upon satisfactory proof from representations by a credible person that the felony offender is about to escape, so that there is no time to procure a warrant.*

*Id.* at 476 (emphasis added); *see also Pearson v. State*, 657 S.W.2d 120, 121 (Tex. Crim.App.1983). In examining the facts of this case, it is doubtful whether there is evidence that the officers were acting upon satisfactory proof of representations by a credible person that the appellant was about to escape, so that there was no time to procure an arrest warrant. Moreover, Officer Rankin testified at trial that he did not believe Barber's accusation that Eva committed the murder or that apopellant was about to escape. However, the circumstances under which she was found dictated her apprehension as a practical matter. She was found on a public street, thirty-two blocks from home, at a time

when her alleged boy friend had been arrested in connection with the death of her child and had accused her of causing the child's death. Moreover, there was nothing to keep her from fleeing Houston. However, there is still a serious question whether the requirements of article 14.04 were met. *See, e.g., Randall v. State,* 656 S.W.2d 487, 490 (Tex.Crim.App.1983); *Hogan v. State,* 631 S.W.2d 159, 161 (Tex.Crim.App.1982); *Hardison,* 597 S.W.2d at 357.

■ Whether or not the requirements of article 14.04 were met, our concern is whether the statement later obtained from Eva Lott was so tainted by the illegal arrest that the admission of the statement requires a reversal of the judgment. Appellant concedes that her statement was voluntary, but contends that the statement was not made with a sufficient act of free will so as to purge the taint of illegality.

■ There are well-established guidelines to determine whether the taint connecting the illegal arrest and the statement has been so attenuated as to dissipate that taint and ensure the admissibility of the statement. The Court of Criminal Appeals has adopted the four factors set out in *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975), to determine whether a statement was obtained by exploitation of an illegal arrest. They were adopted and set out in *Green v. State,* 615 S.W.2d 700, 708 (Tex.Crim.App.1981), as follows:

(1) Whether *Miranda* warnings were given;

(2) The temporal proximity of the arrest and the confession;

(3) The presence of intervening circumstances; and,

(4) The purpose and flagrancy of the official misconduct.

The presence or absence of one of these factors is not an indication *per se* of free will sufficient to break the causal connection between the illegality and the statement. Nor will the presence of one of these factors bar a finding of sufficient free will. However, when an illegal arrest

has occurred, the state has the burden to show that the statement was sufficiently purged of the taint. *Garrison v. State,* 642 S.W.2d 168, 169 (Tex.Crim.App.1982). In reviewing the first factor, the appellant received her *Miranda* warnings when she arrived at the police station, again when she was taken before a magistrate, and a third time when she was turned over to the Juvenile Division. In considering the second factor, the record shows that she gave her statement within two hours of her arrest. The Court of Criminal Appeals in *Townsley v. State,* 652 S.W.2d 791 (Tex.Crim.App.1983) noted that the "longer the time elapsed between confession and arrest the more likely it is that the taint of the illegal arrest will be attenuated." *Id.* at 797. In considering the third factor, that of intervening circumstances, we observe that the state claims that the appellant's presentment before a neutral and detached magistrate within 90 minutes of her arrest was a factor intervening between her arrest and her statement. In *Gregg v. State,* 667 S.W.2d 125, 130 (Tex.Crim.App.1984), the Court of Criminal Appeals noted that the defendant there was taken before a magistrate. In considering the final factor, the purpose or flagrancy of the official misconduct, the record indicates the officers brought the appellant to the police station for investigatory purposes.

We also find the appellant's statement to be exculpatory. With the exception of noting some small bruises and injuries, which she said had been caused by Barber, appellant denied any knowledge of the life threatening bruises and injuries to the child. Moreover, she stated that if any abuses occurred or were suffered by the child, then they were not done in her presence and were very minor ones that she could properly treat and cure. She also denied that she inflicted any bruises, abrasions, or injuries to the child. Furthermore, we find that the only potentially incriminating statement made by appellant was that she had seen the child the night before and the morning of his death. This

was amply proven by at least two other witnesses.

In conclusion, upon consideration of all four of the factors adopted by *Green* and the exculpatory nature of the statement, we find that the statement was the product of a cool, calm, deliberate reflection. Thus, we hold under these facts any taint to her statement was sufficiently purged of its illegality, and the statement was therefore admissible. We overrule appellant's first ground of error.

 Appellant further contends that she must be acquitted because the evidence is insufficient to support her conviction. The Court of Criminal Appeals has held that the standard for reviewing sufficiency of the evidence on appeal is the same for direct and circumstantial evidence cases, *Wilson v. State*, 654 S.W.2d 465 (Tex.Crim.App. 1983); *Denby v. State*, 654 S.W.2d 457 (Tex.Crim.App.1983), and that standard is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Griffin v. State*, 614 S.W.2d 155 (Tex.Crim.App.1981).

Summarizing the evidence, we find that the appellant was the natural and custodial parent who had a duty to provide medical care and protection for the child. She knew the child was being abused over an extended period of time, and that it was Barber who was beating her child. However, because she was dependent on the drugs Barber supplied, she did not leave and did not provide proper medical care or protection for her child. The record also shows that the facial injury that resulted in a subdural hematoma was plainly visible, and that the child's other injuries would be visible to any person bathing the child. Additionally, there was testimony that the appellant was at the apartment with the child the day before and on the day of his death. It was also shown by expert testimony that the child suffered from at least three life-threatening injuries to the head, all of which were visible more than twenty-four hours prior to his death. Moreover, the appellant did not seek medical attention for the child. The state also proved that the child's death was a result of massive subdural hematoma secondary to a blunt trauma.

The evidence adduced at trial is sufficient to support the conviction. The facts in the record are sufficient to exclude every reasonable hypothesis except the guilt of the appellant. The appellant's second point of error is overruled.

The judgment of the trial court is affirmed.