Oscar Emilio ARCILA, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–88–01217–CR.

Court of Appeals of Texas, Dallas.

March 2, 1990.

John H. Hagler, Dallas, for appellant.

Yolanda M. Joosten, Dallas, for appellee.

Before McCLUNG, LAGARDE and OVARD, JJ.

OPINION

LAGARDE, Justice.

Following denial of his motion to suppress evidence, Oscar Emilio Arcila, an illegal Colombian national, pled nolo contendere before the court to possession of cocaine. Pursuant to a negotiated plea bargain agreement, the court sentenced Arcila to a $1,000 fine and thirty-five years' confinement. In his single point of error he contends that the trial court should have granted his motion to suppress evidence because he did not freely and voluntarily consent to a search of his house. We disagree with appellant and affirm his conviction.

The appellant's arrest and the subsequent search resulted from a joint Houston-Dallas investigation of a murder-for-hire scheme. At the hearing on appellant's motion to suppress, a Dallas police officer, Donald S. Ortega, testified that an informant told Houston police that he, the informant, had been contacted by a couple (one male and one female) in Dallas who wanted to kill an undisclosed victim. Equipped with a body microphone, the informant flew into Dallas Love Field where the couple met him and took him to a house in Carrollton where the three discussed details of the murder. At all times monitoring his actions by means of the body mike, officers from the Dallas area[1] and from Houston followed the informant and kept him under surveillance. At the meeting in Carrollton, the couple gave the informant two loaded guns and instructed him to kill his target and any witnesses; they did not give the informant the name of his target. He also received information that two other men were paying for the murder contract and, although these other men were not named, the couple did disclose their address on Valwood in Farmers Branch. At this time, the informant excused himself and, while alone in the bathroom, repeated the address into the body mike for the benefit of the listening officers.

1. The record reflects that there were officers from the Dallas, Carrollton and Farmers Branch Police Departments involved.

Although the female wanted to go and watch the killing, she was refused and stayed behind in Carrollton while the male and the police informant left to find the victim. At this time neither the informant nor the police knew the victim's name or location. The police continued to follow the informant by helicopter and in a variety of unmarked police cars. After following for a time, and fearing they might lose the informant and cause him to be faced with either carrying out the murder or being killed for his failure to do so, the police decided that they did not want the plot to proceed any further. They stopped the informant and his driver and arrested them both. At this time, the police realized that they were only a few blocks from the Valwood location of the two unidentified men who were allegedly paying for the murder contract. During the suppression hearing, Officer Ortega explained why the police decided to arrest the unidentified individuals at that location:

THE COURT: Now I've the main part. Why is it that you went down to that address after you had stopped the car on Valwood? Why did you go down to that address and knock on the door without first going to a magistrate and seeking an arrest warrant?

[OFFICER ORTEGA]: The reason we went to that location is that we had—we knew there was [sic] suspects there and that they had the capabilities of going and committing the murder of the individual that they were supposed to go kill that we didn't know.

We didn't know where the person was supposed to be killed, we didn't know who he was, and we knew that they had the capabilities if this individual had been given firearms by these other individuals at a location in Carrollton. We felt it necessary to go to that location and place those people under arrest.

Because appellant contests the validity of the consent to search, we will set out the surrounding circumstances. Houston police officer J.M. Castillo testified that before he approached appellant's house, he received information that the residence was listed as belonging to appellant. Officer Castillo testified that most of the six marked patrol cars remained at the site of the arrest of the informant and his driver, while Castillo and approximately fifteen other officers went to appellant's house. Police officers surrounded the house. Officer Castillo testified that he knocked on appellant's door at approximately 1:30 a.m. and that appellant opened the door after the first knock. At this time, none of the three officers at the door were displaying their weapons and none of the patrol cars were using their sirens or lights. Appellant wore either "longjohn's" or his underwear. The officer stated that appellant "most definitely" invited him inside. Officer Castillo told appellant that he was under arrest and read him his *Miranda* rights in Spanish. Officer Castillo stated that appellant appeared to understand what was said.

Officer Castillo then told appellant that he suspected that appellant had some drugs [2] on the premises, and appellant confirmed that he did, stating that he had four kilos of cocaine. At this time, the initial three officers and the two Colombians were inside the residence. Appellant orally consented to a search of his residence and later signed a written consent form. The consent form was in English, but Officer Castillo orally translated it into Spanish before appellant signed it. A Farmers Branch officer witnessed appellant's signature. Officer Castillo stated that, without coercion or duress, appellant admitted to possessing the cocaine and freely pointed out its location in the house. Speaking in Spanish, Officer Castillo told appellant that appellant could refuse to consent to the search, and that if he did consent he could later withdraw his consent; however, Officer Castillo did not threaten to get a warrant if appellant did refuse to consent or later withdrew his consent. Nowhere in his testimony does Officer Castillo indicate that appellant was physically intimidated. In fact, the officer stated that appellant

---

**2.** Officer Castillo had information that there were drugs on the premises.

was not even subjected to a pat-down search for weapons.

Officer Ortega, the only other testifying witness at the motion to suppress hearing, stated that prior to entering the Valwood residence, he had drawn his gun, but that when appellant invited the officers inside, he holstered his weapon. Thereafter, the gun was under his jacket and not visible. He said that he did not recall any of the policemen carrying riotguns or shotguns and that the three police cars in front of the residence did not use their lights or sirens. A police helicopter hovered over the residence but did not flash its lights. He stated that after appellant was arrested, appellant gave oral consent to search; however, the police did not begin their search until ten minutes later when appellant signed the written consent form. Officer Ortega stated that he, too, witnessed appellant sign the consent form. Officer Ortega, who also speaks Spanish, corroborated Officer Castillo's testimony in substantially all respects.

A review of the statement of facts reveals that Officer Castillo did not obtain search and arrest warrants because he clearly felt that he was in a fast-moving, emergency situation. He felt that he did not have time to obtain the warrants because he needed to move quickly to protect the unidentified victim. Further, he knew that appellant and his companion were Colombians, and he feared that they might escape. Officer Ortega stated that because he did not know the names of the Colombians and because he did not have a physical description of them, he believed that he lacked sufficient information to obtain a warrant.

■■■ Because of its relevance to the contested issue of consent, we address the issue of the validity of the warrantless arrest. In Texas, a peace officer's authority to make a warrantless arrest is controlled exclusively by statute. *Fry v. State*, 639 S.W.2d 463, 465 (Tex.Crim.App. 1982), *cert. denied*, 460 U.S. 1039, 103 S.Ct. 1430, 75 L.Ed.2d 790 (1983). Statutory warrantless arrests stand as exceptions to the general rule that an officer must obtain a warrant prior to an arrest. *Id. See* TEX.CODE CRIM.PROC.ANN. arts. 14.01, 14.03, 14.04 (Vernon 1981). For example, a warrantless arrest can be valid under article 14.04 if the officer has probable cause to believe that a person has committed or is about to commit a felony and that such person is about to escape. *Lott v. State*, 686 S.W.2d 304, 307 (Tex.App.—Houston [1st Dist.] 1985), *aff'd* 770 S.W.2d 570 (Tex. Crim.App.1986). Probable cause results from reasonably trustworthy information which warrants a reasonable, prudent person in believing that a particular person has committed or is committing a crime. *Id.* In the instant case, the informant told police that the execution contract was paid for by two individuals at the Valwood address. The informant received this information from the couple who picked him up at Love Field, supplied him with two guns, and attempted to transport him to the victim. Assuming that this information constituted probable cause to believe a felony had been or was about to be committed, the record does not contain sufficient probable cause evidence that appellant was about to escape. Police had surrounded appellant's house and when appellant answered the door, he was wearing only his undergarments.[3] Besides these circumstances, the record simply contains no probable cause evidence that the officers believed the appellant was about to escape or that appellant could have escaped either from the house or from the Dallas area.

Clearly, practical considerations played a part in the decision to arrest appellant. Officer Ortega's testimony shows that the police officers believed the most prudent, reasonable course of action dictated that they arrest appellant in order to protect the unidentified intended victim. Although we recognize the practicalities involved, we cannot hold that this warrantless arrest was justified under any of the statutory exceptions. *Cf. Lott*, 686 S.W.2d at 307–08. (apprehension was practical under the circumstances but failed to meet the exception relied upon by the State); *compare*

---

**3.** The record is unclear as to whether appellant was awakened by the police.

with *Nastu v. State*, 589 S.W.2d 434, 439 (Tex.Crim.App.1979), *cert. denied* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980) (an acknowledgement that the reasonableness of police actions must be viewed in the context of often fast-moving and unpredictable circumstances). This does not mean, however, that the evidence was necessarily admitted improperly.

■ We must now examine the record to determine whether any taint was removed by appellant freely and voluntarily consenting to the search, or whether the consent and the subsequent search were tainted by the unlawful arrest. Both the federal and state constitutions offer individuals protection from unreasonable searches; however, an individual may waive this protection by consenting to the search. *Paprskar v. State*, 484 S.W.2d 731, 737 (Tex.Crim.App. 1972), *overruled on other grounds, Kolb v. State*, 532 S.W.2d 87, 89 n. 2 (Tex.Crim. App.1976) (citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). Consent dispenses with the need for both a warrant and for probable cause. *Id.; Zepeda v. State*, 638 S.W.2d 542, 543 (Tex.App.—Houston [1st Dist.] 1982, no pet.).

■ The State bears the burden of showing by clear and convincing evidence that appellant freely and voluntarily relinquished his known rights. *Paprskar*, 484 S.W.2d at 737–38. The State does not meet its burden by showing that the appellant's "consent" was merely an acquiescence to a show of lawful authority or coercion. *Leal v. State*, 736 S.W.2d 907, 910 (Tex.App.— Corpus Christi 1987), *pet. dismissed per curiam*, 773 S.W.2d 296 (Tex.Crim.App. 1989); *Daugherty v. State*, 652 S.W.2d 569, 574 (Tex.App.—Fort Worth 1983, pet. ref'd). Voluntariness of consent is a question of fact determined from the totality of *all* the circumstances. *Meeks v. State*, 692 S.W.2d 504, 510 (Tex.Crim.App.1985) (em-

phasis added); *see also United States v. Sutton*, 850 F.2d 1083, 1086 (5th Cir.1988) (noting that the clearly erroneous standard applies to a determination of voluntariness because the trial judge observes the witnesses' demeanor and credibility).

■ Several recent state and federal opinions have listed factors that should be examined in order to determine whether an appellant freely and voluntarily consented. While these factors provide a framework for analysis, no one factor is controlling or dispositive of the consent issue.[4] Initially, we note that actual voluntary consent to search is possible even though appellant gave consent after the police had arrested him. *Nastu*, 589 S.W.2d at 440; *Paprskar*, 484 S.W.2d at 738. Consent after arrest does not automatically qualify as mere submission to a show of authority. *Leal v. State*, 736 S.W.2d at 911. Further, the illegality of appellant's arrest does not dispose of the inquiry concerning the validity of the search. *Miller v. State*, 736 S.W.2d 643, 649–50 (Tex.Crim.App.1987) (citing *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). In the *Miller* case, the Court of Criminal Appeals stated, "[a] search that arises from an illegal arrest will not automatically and irrevocably create a path that leads to suppression." *Id.* at 649. The Court went on to say that actual consent to search may sufficiently attenuate the taint of an illegal arrest, thus making the seized evidence admissible. *Id.*

Besides the factor of arrest, other significant circumstances include: (1) whether, and to what extent, officers exhibited a show of force, including a display of weapons, *United States v. Gonzales*, 842 F.2d 748, 754 (5th Cir.1988); *Lopez v. State*, 663 S.W.2d 587, 590 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd); (2) whether the actions of the arresting officers can be classified as flagrant misconduct, *Miller*, 736 S.W.2d at 650; (3) whether the police

**4.** In fact, several of the factors mentioned as helpful in determining valid consent have been held to be nondispositive: (1) the consenting party need not know that he has a right to refuse, *Daugherty*, 652 S.W.2d at 574 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); (2) mere

acquiescence should not be inferred when officers state that they will obtain a search warrant, *Leal*, 736 S.W.2d at 911; (3) lack of warnings, including *Miranda* warnings, is probative on the issue of consent, but warnings are not required. *Meeks*, 692 S.W.2d at 510; *Paprskar*, 484 S.W.2d at 737 n. 3.

threatened to obtain a search warrant if the detainee did not acquiesce, or whether the police claimed a right to search, *Zepeda*, 638 S.W.2d at 546; (4) whether the police first gave appellant his *Miranda* warnings, *Miller*, 736 S.W.2d at 649; (5) whether the arrest was made in order to obtain consent, *id.* at 650; (6) whether appellant knew that he could refuse to allow a search, *Gonzales*, 842 F.2d at 754; (7) whether consent was first offered by appellant or was in response to a police request, *Miller*, 736 S.W.2d at 650; (8) appellant's education, intelligence, *Gonzales*, 842 F.2d at 754, and physical condition, *Miller*, 736 S.W.2d at 650; and (9) the proximity of the consent to the arrest, since an intervening time period can provide a degree of attenuation of the taint, *id.* at 649.

■ With these factors in mind, we review the totality of the circumstances to determine whether the State met its burden by presenting clear and convincing evidence that appellant's consent was freely and voluntarily given. The only evidence presented at the motion to suppress hearing came from Officers Castillo and Ortega. They both testified that no weapons were displayed inside appellant's residence and that they did not enter the residence until appellant invited them inside. Three police cars and a helicopter were outside the house, which was also surrounded by police officers. Clearly, the police made some show of force, but our inquiry concerns the coercive nature of this force, not the actual use of manpower. Our inquiry necessarily focuses on what appellant saw and perceived. Both officers testified that neither the helicopter nor the police cars used any lights or sirens; the record contains no evidence that appellant was even aware of the presence of the officers surrounding his house. When appellant orally consented to the search, three officers were present. These officers were "most definitely" invited inside by appellant and the officers did not display any weapons. *Compare Clemons v. State*, 605 S.W.2d 567, 569–571 (Tex.Crim.App.1980) (officer

holding shotgun within the appellant's view while requesting entry negates actual consent). Officer Ortega specifically denied speaking to appellant in an excited, agitated manner. *See Gonzales*, 842 F.2d at 752 (officer speaking in a normal tone of voice deemed a noteworthy factor). The record contains no evidence that the officers ever physically threatened or touched appellant in any way. Based on the record before us, we hold that the evidence is sufficient to establish that the police did not engage in a *coercive* display of force or weaponry. Although appellant's arrest was statutorily invalid for failure to obtain a warrant, his arrest resulted from a decision made in a fast-moving and volatile situation; fear that some harm would come to the unidentified victim or to the informant motivated the police action. This motivation, coupled with the lack of *coercive* forceful display, rules out any suggestion that the police engaged in flagrant misconduct.

The evidence shows that Officer Castillo gave appellant his *Miranda* warnings in Spanish prior to the search and that appellant seemed to understand these warnings. Officer Castillo specifically stated that no one threatened to obtain a search warrant.

Although appellant's consent was in response to a police request, evidence indicates that appellant was informed in Spanish that he could refuse to consent and could later withdraw consent previously given, and that appellant understood that he could refuse or withdraw consent. Appellant, a Colombian national, conversed in Spanish with two Spanish-speaking officers prior to giving consent. Appellant orally consented, but the police did not conduct a search until appellant signed a written consent form.[5] This consent form was translated into Spanish by Officer Castillo, who testified that appellant understood what he was signing. Further, this second, written consent was given some ten minutes after appellant first consented, and appellant presumably had time to reconsider his decision during this interval. Sincere effort

---

**5.** Oral consent, by itself, can be valid consent. *See Montoya v. State*, 744 S.W.2d 15, 25 (Tex. Crim.App.1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988).

seems to have been made to obtain appellant's informed consent, and the record contains no indication that appellant did not understand the officers. *See generally Montoya v. State,* 744 S.W.2d 15, 24–25 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988); *Leal,* 736 S.W.2d at 911.

Militating against voluntary consent is the fact that the police arrived at 1:30 a.m. while appellant was attired in his underclothes. The record contains no evidence, however, that appellant demonstrated any discomfort concerning his attire, nor is the police presence at the late hour dispositive or inherently coercive. *See Zepeda,* 638 S.W.2d at 545 (similar facts). The police conducted their search soon after appellant's illegal arrest. Although the lack of a significant time interval between arrest and consent is important, it does not, standing alone, require that the trial court suppress evidence. *Miller,* 736 S.W.2d at 650.

Officer Castillo testified that appellant led officers to the cocaine because the appellant was renting the house and he did not want it damaged during a search. No evidence exists to show that the arresting officers threatened property damage; appellant's pragmatic decision to avoid harm incidental to a search does not render the search involuntary or coerced. *Cf. Nastu,* 589 S.W.2d at 440 (the appellant consented to search on condition that he could first calm his wife). Although it is true that appellant's decision to consent ultimately proved not to be in his interest, consent need not coincide with an astute choice to be voluntary. *Gonzales,* 842 F.2d at 755 n. 3; *see generally Miller,* 736 S.W.2d at 650 (the appellant consented to search because he did not want his parents to discover his drug usage).

In upholding a search following an illegal arrest, in *Bretti v. Wainwright,* 439 F.2d 1042 (5th Cir.), *cert. denied,* 404 U.S. 943, 92 S.Ct. 293, 30 L.Ed.2d 257 (1971), the Fifth Circuit Court of Appeals based its holding on two factors, the absence of any coercive tactics and, more importantly, the presence of significant intervening factors. *Id.* at 1045. In discussing valid consent following an illegal arrest, the court in *United States v. Ballard,* 573 F.2d 913, 916 (5th Cir.1978) stated:

> The most significant factor relied upon by the court [in *Bretti* ] was a warning informing the defendant of his right to refuse to permit the search in addition to the standard elements of the *Miranda* warning. The court in *Bretti* reasoned:
>
>> While warnings prior to a consensual search may not have the same indispensability as those required prior to a confession ... they do help insure that the consent is free, voluntary, and untainted by the arrest's possible illegality. In the instant case the presence of these warnings leads us to conclude that any coercion flowing from the possible illegality of appellant's arrest was dissipated.

439 F.2d at 1046. Similarly, in *United States v. Fike,* 449 F.2d 191 (5th Cir.1971), the court held that advising a defendant of his right to refuse to permit a search was a sufficient intervening occurrence to remove the influence of a prior fourth amendment violation.

*Ballard,* 573 F.2d at 916.

■ The record before us shows that appellant was not threatened with harm to his person or property and that the display of police resources was not so great or coercive as to compel appellant's simple acquiescence. Appellant was read his *Miranda* warnings in Spanish. The officers testified that appellant understood his rights and his decision to consent. Appellant understood that he could refuse to consent or later withdraw consent, yet he did consent twice, orally and in writing. Police made no threat to obtain a search warrant if appellant refused to consent or later withdrew consent. We conclude, therefore, that any coercion flowing from the illegality of appellant's arrest was dissipated. After examining the totality of the circumstances as revealed by the record, we cannot say that the trial court abused its discretion when it found clear and convincing evidence that appellant consented. We hold that the evidence supports the conclusion that appellant's consent was

freely and voluntarily given, thereby rendering admissible the evidence seized pursuant to that consent. We overrule appellant's point of error.

The judgment of the trial court is affirmed.