Billy Hugh MILLER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

Craig Allen GREGORY, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 3–90–165–CR, 3–90–166–CR.

Court of Appeals of Texas, Austin.

Aug. 14, 1991.

Rehearing Overruled in No. 3–90–165–CR Sept. 11, 1991.

Cynthia A. Stewart, Jackson, Miss., for Billy Hugh Miller, Jr.

Jim Brookshire, Georgetown, for Craig Allen Gregory.

Sally Ray, Asst. Dist. Atty., Georgetown, for the State.

Before CARROLL, C.J., and SMITH, J., and DAVIS, J.* (Retired, Sitting by Assignment).

DAVIS, Retired Justice.

Appellants entered negotiated pleas of guilty before the court to the offense of possessing a usable quantity (more than 5 pounds) of marihuana. *See* Tex. Health & Safety Code § 481.121(b)(4) (1991). Punishment was assessed for each of the appellants at fifteen years' confinement and a $5,000 fine. Appellants challenge only the

---

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003 (1988).

trial court's denial of their motions to suppress evidence. *See* Tex.R.App.P.Ann. 40(b)(1) (Pamph.1991) (regarding appeal of nonjurisdictional matters when judgment entered on plea).

In his sole point of error, appellant Miller asserts the trial court erred in overruling his motion to suppress evidence seized following his arrest. Appellant Gregory asserts five points of error, contending the trial court erred in overruling his motion to suppress because: (1) he had a reasonable expectation of privacy in the vehicle in which the evidence was discovered; (2) the search was the result of an illegal detention; (3) the search was the result of an illegal, warrantless arrest; (4) the State failed to show the warrantless arrest was conducted under circumstances that made procuring a warrant impractical; and (5) the search was not conducted under exigent circumstances that made it impractical to secure a warrant.

The events that resulted in the arrest of appellants and the search of their vehicle began with a telephone call on Friday, November 3, 1989, to Texas Department of Public Safety (D.P.S.) Sergeant Robert Nestoroff from an employee at Air Center II, a "fixed base rental agency" in Austin. The employee related to Nestoroff that he was suspicious of Miller because he had come from out of state and because he claimed to have a given amount of flying time, but could not produce a current log book. Miller was advised that without an updated log book, an instructor would have to check him out in an aircraft. Air Center II employees were suspicious also because Miller would not provide a local telephone number, but gave a digital pager number, and because he paid cash for his aircraft rental.

Sergeant Nestoroff, a licensed pilot, testified that he had been actively engaged in investigating the air transportation of controlled substances for approximately fourteen years and had lectured extensively throughout this country on aircraft smuggling operations. Nestoroff detailed a number of awards he had received for his work in this field. He related that he had cooperated with other agencies on all levels in investigating air smuggling of controlled substances and had maintained contact with aircraft rental agencies that furnished him with information concerning possible narcotics operations.

The Air Center II employee advised Nestoroff that Miller stated he was staying at a local trailer park, "but currently he was staying at the Crest Hotel." The employee provided Nestoroff with Miller's hotel room number. A hotel employee advised Nestoroff that the room was rented to an Ed Sanders who had given an Atlanta, Georgia address and a company name of Sky Dog, Incorporated. The hotel employee furnished Nestoroff with a list of telephone calls that had been made from the room. The list reflected calls to aircraft rental agencies in Lockhart and Georgetown, two calls to Mississippi, and a single call to Southwest Airlines in San Antonio.

Nestoroff contacted Icon Aviation in Georgetown, one of the aircraft rental agencies called from the hotel room. An Icon employee reported that Miller had rented an aircraft to go to Brandon, Mississippi. A call to the Mississippi Bureau of Narcotics revealed that Miller had been arrested in Louisiana in January 1989 with approximately $36,000 in cash and was under "current active investigation" for narcotics trafficking by the Drug Enforcement Administration (D.E.A.). The agent at the Mississippi bureau further reported that the D.E.A. had a reliable confidential informant who had reported that Miller was involved in the air transportation of marihuana from Texas to Mississippi.

On Sunday, November 5, 1989, an Icon Aviation employee advised Nestoroff that Miller had told Icon he would have the aircraft back by 1:00 p.m. as scheduled in the lease, but that he wanted to rent the aircraft to return to Brandon, Mississippi the following day.

Nestoroff had previously contacted El Paso Intelligence Center (E.P.I.C.), an agency with aircraft tracking capability, about monitoring Miller's flight. Midmorning Sunday, E.P.I.C. advised Nestoroff that the aircraft rented by Miller from

Icon Aviation had just landed at the municipal airport in Austin and had taxied to Hughes West, a private facility located on the field.

A Hughes West employee told Nestoroff that two white males deplaned. The men carried soft-sided luggage through the terminal to a vehicle, then one of the men returned to the aircraft and departed. Knowing the aircraft was due back at 1:00 p.m., Nestoroff and other D.P.S. officers, dressed in street clothes, were waiting at Icon Aviation in Georgetown when the plane landed. Miller deplaned and met another man, identified as appellant Gregory, whom the officers had seen arrive in a station wagon with a Georgia license plate. Gregory handed Miller a sum of cash, and Miller returned to the terminal and paid cash for the aircraft rental. Miller gave Icon a receipt, in accordance with reimbursement provisions in the lease agreement, which reflected he had purchased fuel in Harlingen. In response to Icon employees' questions as to why he went to Harlingen rather than Mississippi, Miller told them he had decided to go fishing. Miller did not appear, however, to have any fishing gear with him when he deplaned.

Because Icon employees had earlier advised him that Miller had arranged to rent an aircraft the following day, Nestoroff expected Miller and Gregory to leave the airport in the station wagon driven by Gregory. Instead, Miller and Gregory proceeded to Pilot's Choice Aviation, another aircraft rental agency at the Georgetown airport, and one of the agencies called from Miller's room at the Crest Hotel. Nestoroff had previously learned from Pilot's Choice employees that a "Butch" Miller had inquired about renting an aircraft.

While Miller and Gregory were at Pilot's Choice, Nestoroff contacted one of the rental agency's employees, who stated that Miller wanted to rent an aircraft to fly to Mississippi that day. Pilot's Choice did not rent Miller an aircraft, but the agency did allow him to make a check-out flight.

Nestoroff and the other officers watched Miller and Gregory take off on their check-out flight. While the flight was in progress, the officers looked through the windows of the station wagon driven by Gregory, where they observed soft-sided luggage. The officers did not see any fishing equipment in the station wagon. After their check-out flight, Miller and Gregory departed in the station wagon, with Miller driving. Nestoroff testified that, at this point, he was "reasonably suspicious" that Miller and Gregory were transporting controlled substances.

The appellants proceeded south on Interstate 35 toward Austin. Nestoroff contacted a highway patrol officer and asked him to stop appellants' vehicle. Nestoroff and the other plain-clothed officers arrived after the patrolman stopped the station wagon. When appellants refused to consent to a search, the officers handcuffed them and drove them to the highway patrol station in Georgetown. Nestoroff was unsure whether he needed a warrant to search appellants' vehicle and so he called the district attorney to the station. The district attorney advised the officers that they had probable cause to make a warrantless search. A search of the soft-sided luggage revealed packages of marihuana weighing a total of fifty pounds.

Miller directs his sole point of error to the court's action in overruling his motion to suppress. Since issues are raised under his point of error that incorporate questions in Gregory's points of error, we will evaluate them together. In his five points of error, Gregory asserts that: (1) he had an expectation of privacy in the searched vehicle; (2) the search was the result of his illegal detention; (3) the search was the result of a warrantless arrest without probable cause; (4) the State failed to show that the arrest was made under circumstances that made procuring a warrant impractical; and (5) the search was not conducted under exigent circumstances which made it impractical to secure a warrant.

At the outset, we conclude that appellants were arrested when their vehicle was stopped on Interstate 35 and they were surrounded by a highway patrolman and five other D.P.S. officers. The highway patrol car and an unmarked vehicle were

stopped behind the station wagon. Nestoroff stopped his vehicle in front of the station wagon and backed it "up close to the [appellants'] vehicle." The officers questioned Gregory at the front of the station wagon and Miller at the back of the vehicle. Nestoroff testified that it was "hard to say" whether appellants were free to leave at this point. Appellants were handcuffed, placed in separate vehicles, and taken to the D.P.S. station in Georgetown. Appellants' vehicle was towed to the D.P.S. station.

While we do not consider any of the ensuing events in determining whether probable cause existed to stop the vehicle, arrest defendants, and search the station wagon, we note that Gregory gave the officers two statements, which the officers knew were false, concerning his whereabouts before his arrival at the Georgetown airport. The officers obtained further information that Gregory was under investigation for transportation of marihuana from Jamaica to the United States, and that he had been arrested in New York for possession of marihuana on a commercial flight.

Texas Code Cr.P.Ann. art. 15.22 (1977) provides:

> A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant.

The court in *Hawkins v. State,* 758 S.W.2d 255 (Tex.Cr.App.1988), stated that, under article 15.22, the "point of arrest" occurs at the moment a person's freedom of movement is restricted or restrained. 758 S.W.2d at 259. The United States Supreme Court has stated that, for the purpose of Fourth Amendment analysis, a person has been "seized" "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). While the officer's subjective intent is one factor, the court will disregard the officer's testi-

mony that a defendant was not under arrest if belied by the facts of the case. *Ruth v. State,* 645 S.W.2d 432, 435 (Tex.Cr. App.1979).

In this case, the position of the officers' vehicles in relation to appellants' vehicle, the number of officers at the scene, the separation of appellants for questioning, the fact that appellants were handcuffed after a short time, and Nestoroff's testimony that he was uncertain whether appellants were free to leave, dictate the conclusion that appellants were under arrest when their vehicle was stopped and they were surrounded by the officers.

■ When evidence is presented on a motion to suppress, the judge determines the credibility of the witnesses and is the sole trier of fact. *Carrasco v. State,* 712 S.W.2d 120, 122 (Tex.Cr.App.1986). The appellate court should defer to the trial court's finding of fact absent a clear abuse of discretion. *State v. Carr,* 774 S.W.2d 379, 380 (Tex.App.1989, no pet.).

■ The legality of the search depends upon whether probable cause existed to search the vehicle for contraband at the time the station wagon was stopped on Interstate 35, since probable cause may not be based on knowledge acquired following the appellants' arrest. *See* 22 Tex. Jur. 3d Criminal Law § 2120 (1982).

■ Probable cause for a warrantless arrest exists when at that moment the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the arrested person has committed or is committing an offense. *Britton v. State,* 578 S.W.2d 685, 689 (Tex.Cr.App.1979). When a peace officer possesses probable cause that a motor vehicle contains contraband, a valid search may be conducted in the part of the vehicle where the officer believes the contraband is located. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Christopher v. State,* 639 S.W.2d 932, 935 (Tex.Cr.App. 1982). The standard for reviewing the existence of probable cause is the "totality of

the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The "totality of the circumstances" standard applies to warrantless as well as warrant searches. *Angulo v. State*, 727 S.W.2d 276, 278 (Tex. Cr.App.1987).

 Because of his long experience in investigating aircraft drug trafficking, Officer Nestoroff attached significance to a number of Miller's activities that he believed were consistent with the conduct of a drug trafficker. While any one of the factors considered alone may be as consistent with innocent activity as wrongdoing, when taken in toto their probative force may be sufficient to support a reasonable suspicion of wrongdoing. *See Holladay v. State*, 805 S.W.2d 464, 473 (Tex.Cr.App. 1991). Officers may consider prior knowledge, personal observation, and reasonably trustworthy information in making their evaluation of probable cause. *See Holladay*, 805 S.W.2d at 472–73 (enumerating factors officer relied on); *Beverly v. State*, 792 S.W.2d 103, 105 (Tex.Cr.App.1990).

 As a veteran investigator of air transportation and controlled substances, Nestoroff found Miller's use of cash to pay for aircraft rental and of a pager to communicate consistent with the conduct of drug traffickers. His experience also made him aware that Harlingen is a pickup point for marihuana.

Using the list of telephone calls made from the hotel room Miller was presumably occupying, Nestoroff learned from Mississippi authorities that Miller had been arrested in January 1989 with $36,000 in cash and was under active investigation by the D.E.A. That agency had a "reliable confidential informant who had advised them that Mr. Miller was involved in the transportation of controlled substances from Texas to Mississippi via aircraft."

While Miller's occupation of a hotel room in the name of another person is not inherently significant, it appears to be consistent with a pattern of deception practiced by Miller. Other facts that fit the pattern are Miller's trip to Harlingen, after he told the rental agency he was going to Mississippi,

and his effort to rent an aircraft from Pilot's Choice for a same-day departure for Mississippi when he had a brief time earlier arranged to rent an aircraft at Icon for a trip on the following day. It is also noteworthy that, before returning the aircraft to Icon as scheduled, Miller landed in Austin accompanied by Gregory, the men removed soft-sided luggage from the aircraft, and Gregory transported the luggage in the station wagon with Georgia license plates to Georgetown, where he was reunited with Miller. In the time between Miller and Gregory's meeting at the Icon terminal and their departure in the station wagon, Nestoroff and his fellow officers learned for the first time that Miller had flown to Harlingen rather than to Mississippi.

We conclude that the information the officers acquired at the Icon terminal, along with the knowledge Nestoroff had previously acquired, was sufficient to warrant a prudent person in believing that Miller was attempting to transport controlled substances to Mississippi and that such contraband was in the station wagon Gregory had driven to the Georgetown airport.

Nestoroff's testimony that he was only "reasonably suspicious" when appellants were stopped on the interstate is not controlling. The legality of the arrest and search turns on an objective assessment of the officers' actions in light of the circumstances confronting them at that time. *See Scott v. United States*, 436 U.S. 128, 137–38, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978); *Gordon v. State*, 801 S.W.2d 899, 907 (Tex.Cr.App.1990).

 Having concluded that probable cause existed to arrest Miller and Gregory and search their vehicle, we next address the contention in Gregory's points of error four and five, and included in Miller's single point of error, that the State failed to show exigent circumstances to justify a warrantless arrest. With the knowledge that appellants had gone to a second rental agency in an unsuccessful effort to secure an aircraft for departure that day, a pru-

dent person would be warranted in concluding that appellants had developed a sense of urgency regarding their departure for Mississippi with the contraband. Knowing that appellants were no longer content to wait until the next day for their aircraft at Icon, the officers could have reasonably concluded that, when appellants left the terminal in the station wagon, they would make additional efforts to depart for Mississippi that day.

The mobility of automobiles "creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible." *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976). The *Opperman* court further noted, "besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *Id.* at 367, 96 S.Ct. at 3096.

Armed with probable cause to search appellants' vehicle for contraband and knowledge of appellants' sense of urgency in departure for Mississippi, the officers could prudently conclude that appellants were about to escape when they left the terminal in the station wagon. *See* Tex. Code Cr. P.Ann. art. 14.04 (1977) (authorizing warrantless arrest when it appears felony has been committed and offender is about to escape).

Given that the officers had probable cause to search appellants' vehicle, we perceive no problem in their removing the station wagon from Interstate 35, where the traffic was "heavy," to the D.P.S. station in Georgetown to conduct the search. *See Texas v. White,* 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975). Nor do we find any error resulting from the warrantless search of the vehicle at the D.P.S. office. We find no greater intrusion in searching the vehicle without a warrant where probable cause exists than in searching the vehicle after obtaining a warrant from a magistrate. *See Chambers v. Maroney,* 399 U.S. 42, 51-52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970);

*Scott v. State,* 531 S.W.2d 825, 827 (Tex.Cr. App.1976). Appellant Miller's single point of error and appellant Gregory's third, fourth and fifth points of error are overruled.

In his first point of error, appellant Gregory asserts that he had standing to protest the search because he had a reasonable expectation of privacy in the vehicle. Gregory contends that his sole control of the station wagon during the trip from Austin to Georgetown vested him with standing to contest the search. We need not reach this point in light of our conclusion that the officers had probable cause to search the vehicle. *See Long v. State,* 532 S.W.2d 591 (Tex.Cr.App.1975). Gregory's first point of error is overruled.

In his second point of error, appellant Gregory asserts that the search was illegal since it was the result of appellant's illegal detention. Since we did not consider any evidence acquired following appellants' arrest in reaching the conclusion that probable cause existed to search the vehicle when it was stopped on Interstate 35, we need not address this point of error. Appellant Gregory's second point of error is overruled.

The judgments are affirmed.