IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-360-CR


AND


NO. 3-91-361-CR




ALEJANDRO ARRAMBIDE,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NOS. 0912338 & 0912339, HONORABLE BOB JONES, JUDGE PRESIDING



 




 Appeals are taken from convictions for the offenses of possessing a useable quantity
of marihuana of more than four ounces but less than five pounds, and possession of a controlled
substance, cocaine in an amount less than twenty-eight grams. Tex. Health & Safety Code Ann.
§§ 481.112(b), 481.121(b)(3) (West 1992). After finding appellant guilty of both offenses, the
court assessed punishment at eight years probated, and a five hundred dollar fine in each cause. 
In appellant's points of error one, two and three, complaint is made of the court's failure to
suppress the evidence because the evidence was seized as the result of an illegal arrest. In points
of error four and five, appellant asserts that the court erred in failing to find his consent to search
was the result of an illegal arrest and not voluntarily given. We overrule appellant's points of
error and affirm the judgments of the trial court.

 Austin Police Officer Randal Milstead testified that he had received information
from several sources that appellant was distributing cocaine and marihuana in exchange for
property. Milstead related that on December 3, 1990, informants Kirk Reeves and Jim Thomas
told him that the cocaine and marihuana they had in their possession had come from appellant. 
They advised Milstead that appellant preferred to take property like jewelry or cordless telephones
in payment for narcotics. The informers furnished additional information regarding appellant, his
telephone number, the name of his business, and his address.

 Officer Milstead's check of appellant's telephone number, the name of appellant's
business, and appellant's address confirmed the correctness of the informants' information. With
the permission of an unnamed informant, Milstead "prepped" a tape in order that a call by the
informant to appellant might be recorded. The taped calls that followed revealed that the
informant advised "Alex" that Tony had brought "those phones by" and wanted a "couple of
tapes." Alex asked if he wanted any more "vegetables," an offer the informant refused. Alex also
wanted to know if he had any "jewelry." In a call made shortly thereafter, the informant told
Alex that Tony had some "jewelry" and wanted "bell peppers" from the garden. The informant
and Alex agreed to meet at the El Torito Restaurant at "a quarter after nine." Milstead believed
it was appellant's voice on the tape because the number he dialed was listed in appellant's name
and "he identified himself as Alex." Milstead knew from experience that narcotics "always have
a code word" when transactions are made over the telephone. The informant advised Milstead
that the code word for cocaine was "tapes" or "movies," and the code word for marihuana was
"vegetables."

 Milstead, accompanied by Austin Police officers James Fealy and Malcolm Wilson,
arrived at the parking lot at El Torito "about 9:15 [p.m.]." Shortly after their arrival, the officers
saw a vehicle enter the parking lot of the make and description the informants told Milstead
appellant would be driving. The license number matched the number the informants had given
Milstead. The person who stepped from the vehicle possessed the features of the person described
by the informers. Appellant was arrested because he had agreed to "[d]eliver cocaine and
marihuana to that location at that time. He had made an agreement to sell narcotics."

 When evidence is presented on a motion to suppress, the court determines the
credibility of the witnesses and is the sole trier of fact. Carrasco v. State, 712 S.W.2d 120, 122
(Tex. Crim. App. 1986). The appellate court should defer to the trial court's findings of fact
absent a clear abuse of discretion. Miller v. State, 815 S.W.2d 805, 809 (Tex. App.--Austin 1991,
pet. ref'd).

 Probable cause for a warrantless arrest exists when at that moment the facts and
circumstances within the officer's knowledge and of which he has reasonably trustworthy
information are sufficient to warrant a prudent person in believing that the arrested person has
committed or is committing an offense. Britton v. State, 578 S.W.2d 685, 689 (Tex. Crim. App.
1979). The standard for reviewing the existence of probable cause is the "totality of the
circumstances" test set forth in Illinois v. Gates, 462 U.S. 213, 238 (1983). The "totality of the
circumstances" standard applies to warrantless as well as warrant searches. Angulo v. State, 727
S.W.2d 276, 278 (Tex. Crim. App. 1987).

 Appellant points to the fact that the informants were not shown to have been
reliable. An informant's veracity is relevant in determining the value of his report; it is one
indicia of reliability to be balanced against others in an analysis of the totality of the
circumstances. Gates, 462 U.S. at 230, 234. A low degree of veracity, however, may be
compensated for by some other indicia of reliability. Id. at 233; see also, Alabama v. White, 110
S.Ct. 2412 (1990). In Angulo, the court stated that even when a tip is from an unknown
informant, the fact that the informant is right about some things makes it more likely that he is
right about other facts. 727 S.W.2d at 279. In the instant cause, every detail mentioned by the
informers was verified, such as appellant's name, the name of his business, his telephone number
and address, the description of appellant's vehicle, and appellant's physical description. Milstead
learned from the telephone conversation that a person identified as "Alex" at the telephone number
listed in appellant's name had agreed to deliver "vegetables" and "tapes" to the informant at the
El Torito restaurant at 9:15 that evening for "phones" and jewelry. Milstead knew that code
names are used in narcotic transactions. 

 Officers may consider prior knowledge, personal observation, and reasonably
trustworthy information in making the evaluation of probable cause. Holladay v. State, 805
S.W.2d 464, 472-73 (Tex. Crim. App. 1991). Based on the officers' verification of the
informants' information, the additional knowledge the officers learned, and their knowledge of
drug trafficking, we conclude that the officers had probable cause to believe that, when he was
arrested, appellant had committed the offense of offering to sell a controlled substance. We reject
appellant's contention that no violation of the law is shown. The offense of delivery by offer to
sell is complete when, by words or deeds, a person knowingly offers to sell a controlled
substance. Tex. Health & Safety Code Ann. § 481.002(8) (West 1992); Stewart v. State, 718
S.W.2d 286, 288 (Tex. Crim. App. 1986). We find that a reasonable person would have
concluded that the representations of appellant constituted an offer to sell a controlled substance. (1) 
We overrule appellant's points of error one, two and three.

 In his fourth point of error, appellant contends the trial court erred in failing to find
the consent to search form signed by appellant was the result of an illegal arrest. Following the
arrest of appellant, the search of appellant's person and car failed to reveal any narcotics. 
Subsequently, appellant agreed to a search of his home where the officers found the cocaine and
marihuana that forms the basis of the instant convictions. Although we have determined that
appellant's arrest was legal, we will assume that the arrest was illegal in addressing this point of
error. When an arrest is illegal, the question becomes "whether the consent to search was
obtained by the exploitation of an illegal arrest or detention, or by means sufficiently
distinguishable to be purged of the primary taint." Juarez v. State, 758 S.W.2d 772, 778 (Tex.
Crim. App. 1988).

 After appellant was arrested and placed in the police van, Officer Wilson read
appellant his Miranda rights. Appellant was asked if he would consent to a search of his
residence, a request appellant initially refused. Following appellant's denial of any knowledge
of narcotic transactions, Officer Fealy told appellant that he did not believe he was telling the truth
"and that we were going to the police station and intended to get to the bottom of it." In response
to Fealy's question whether he would agree to a search of his residence, appellant stated he would
agree subject to numerous stipulations, an offer Fealy declined. A discussion of options the
officers might pursue took place out of the presence and hearing of appellant. Obtaining a search
warrant and approaching appellant's wife with a request to search the residence were options the
officers considered.

 In the midst of the officers' consideration of the appropriate course to pursue,
appellant conveyed word by another officer that he wanted to talk to Officer Fealy. Appellant told
Fealy that he would agree to the search if the officers would not arrest or search his wife, not
scare his wife or child, and allow him to talk to his wife before the officers entered the house. 
Appellant advised Fealy that he would take the officers to where the narcotics were located so that
the officers would not "tear his house apart." Fealy related that he agreed to appellant's terms
as long as there was no indication that appellant was not being truthful. Appellant was advised
of his constitutional right to refuse permission to search. Milstead stated appellant read the
consent to search form and stated that "he understood the rights therein and what he was doing." 
The consent form appellant signed contains a recitation that appellant had been informed of his
constitutional right not to have a search made of the premises in question. Approximately fifteen
to twenty minutes elapsed between the time of the arrest and appellant's agreement to allow the
officers to search his residence. In contradiction of the officers' testimony, appellant testified that
the officers threatened to tear down the door to his house with a battering ram that they threw at
his feet and said they would arrest his wife if he did not sign the consent form.

 After arrival at appellant's residence, appellant directed officers to a closet in his
home where a blue bag containing cocaine, marihuana, and a set of scales was recovered. 
Pursuant to appellant's direction, the officers went to a refrigerator where a quantity of marihuana
was seized. Milstead testified that the officers concluded the search after appellant told them that
they had recovered all of the narcotics.

 After concluding that the arrest that preceded the defendant's consent to search was
illegal, the court in Arcila v. State, 788 S.W.2d 587, 591 (Tex. App.--Dallas 1990), aff'd, 834
S.W.2d 357 (Tex. Crim. App. 1992), reviewed factors to be considered in determining whether
the consent to search sufficiently attenuates the taint of the illegal arrest. In Arcila, the court
stated:



 Besides the factor of arrest, other significant circumstances include: (1)
whether, and to what extent, officers exhibited a show of force, including a display
of weapons; (2) whether the actions of the arresting officers can be classified as
flagrant misconduct; (3) whether the police threatened to obtain a search warrant
if the detainee did not acquiesce, or whether the police claimed a right to search;
(4) whether the police first gave appellant his Miranda warnings; (5) whether the
arrest was made in order to obtain consent; (6) whether appellant knew that he
could refuse to allow a search; (7) whether consent was first offered by appellant
or was in response to a police request; (8) appellant's education, intelligence, and
physical condition; and (9) the proximity of the consent to the arrest, since an
intervening time period can provide a degree of attenuation of the taint.



(citations omitted). It is not necessary that each of the above factors be found in favor of the
State. Juarez, 758 S.W.2d at 780.

 The determination of whether consent is voluntary is a question of fact to be
determined from the totality of the circumstances. Juarez, 758 S.W.2d at 776. The court, as the
sole trier of the facts, was free to disbelieve appellant's testimony that he was coerced into signing
the consent to search form by threats to his wife or his property. No more than four officers were
present and there is no evidence of any weapons being displayed. Although the officers initially
asked appellant to consent, appellant requested the conversation with Fealy in which appellant
stated that he would agree to the search.

 In Bretti v. Wainwright, 439 F.2d 1042 (5th Cir. 1971), cert. denied, 404 U.S. 943
(1971), the court found that consent to search was shown by clear and convincing evidence
following an illegal arrest where there was no evidence of coercive tactics, "and perhaps most
important, there were significant 'intervening occurrences' between the alleged illegal arrest and
the acquisition of evidence sought to be used." Bretti, 439 F.2d at 1045. After noting that the
intervening circumstances were the constitutionally mandated warnings given the defendant, the
Bretti court stated:



While warnings prior to a consensual search may not have the same
indispensability as those required prior to a confession, they do help ensure that the
consent is free, voluntary, and untainted by the arrest's possible illegality. In the
instant case the presence of these warnings leads us to conclude that any coercion
flowing from the possible illegality of appellant's arrest was dissipated.



439 F.2d at 1046 (citations omitted).

 In the instant cause, appellant was given the Miranda warnings and advised of his
right not to consent. The officers testified that appellant stated that he understood his rights and
his decision to consent. While only fifteen to twenty minutes elapsed between the arrest and the
consent to search, the temporal proximity factor has been said to be "the least determinative factor
involved." Juarez, 758 S.W.2d at 781. We find that any coercion flowing from the alleged
illegal arrest was dissipated. The totality of the circumstances dictates that the State met its
burden of proving by "clear and convincing evidence" that appellant freely and voluntarily
relinquished his known rights. Arcila, 788 S.W.2d at 591. Appellant's fourth point of error is
overruled.

 In his fifth point of error, appellant asserts that his consent to search was coerced
and not voluntarily given. We find that our disposition of appellant's fourth point of error is
dispositive of this contention.

 The judgments are affirmed.


 

 Tom G. Davis, Justice

[Before Justices Jones, Kidd and Davis*]

Affirmed on Both Causes

Filed: February 24, 1993

[Do Not Publish]

* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. Appellant testified that "tapes" meant "cocaine," and "vegetables" was the name used for
"pot." Since this was knowledge acquired following the arrest, it cannot be considered in
determining whether probable cause existed to arrest appellant.