736 S.W.2d 907 (1987)
Jose Francisco LEAL, Jr., Appellant,
v.
The STATE of Texas, Appellee.
No. 13-86-405-CR.
Court of Appeals of Texas, Corpus Christi.
August 28, 1987.
Rehearing Denied September 17, 1987.
*908 Joe K. Hendley, Donna, Robert J. Salinas, Hector A. Casas, Mercedes, for appellant.
Rene Guerra, Dist. Atty., Edinburg, for appellee.
Before NYE, C.J., and UTTER and SEERDEN, JJ.

OPINION
NYE, Chief Justice.
Appeal is taken from a judgment of conviction for possessing between 200 and 2000 pounds of marihuana. Punishment was assessed at twelve years. Appellant Jose Francisco Leal complains, in three points of error, that the evidence of his guilt should have been suppressed due to an illegal search. A fourth point of error urges that reversal is required due to an improper stipulation of evidence.
Both the hearing on motion to suppress and the trial on the merits were before the trial court. Appellant reurged his suppression *909 motion at trial. The principal witness at both the suppression hearing and the trial was Officer Victor Escalon, an agent of the Texas Department of Public Safety. His testimony at the suppression hearing is summarized as follows. Escalon received a tip from a confidential informant, who had given reliable information "about two" times in the past, that a shipment of marihuana had come across from Mexico. The next day, February 1, 1985, the informant told Escalon that the marihuana had been taken to a ranch of approximately fifteen acres in Hidalgo County. The informant particularly described a location north of the town of Mercedes and told Escalon that two trailers, one a white mobile home trailer and one a colored trailer from a tractor-trailer rig, would be surrounded by an old, beat-up fence. Escalon located the described ranch and set up surveillance to the north of it that same day. He saw several vehicles enter the ranch by a gate, and one vehicle left. Then a bright orange Pontiac Trans Am arrived and backed up to the tractor trailer. Someone removed some things from the Trans Am's trunk and put them in the back seat, then some packages were taken from the tractor trailer and placed in the trunk of the Trans Am. The packages taken from the tractor trailer were wrapped similarly to marihuana that Escalon had seen in his prior experience.
Escalon followed the Trans Am when it left, and the vehicle immediately met a pickup truck that was parked on the highway. The Trans Am's driver exchanged places with two men in the pickup and drove the pickup away. Escalon stopped the Trans Am after about a mile. He noticed that the spare tire was in the back seat, and that a strong odor of marihuana emanated from the car. The driver consented to a search of the trunk, which revealed a large amount of marihuana.
Escalon arrested the two occupants of the Trans Am and called for assistance from other law enforcement officers. When help arrived, he and about four other officers returned to the ranch. The gate was locked, and a "Keep Out" sign had been posted. Escalon took bolt cutters, severed the chain which locked the gate, and the officers entered the ranch. The two trailers, as well as a permanent building, sat about in the middle of the ranch. Appellant was the only person on the premises. Escalon approached appellant, who described himself as the caretaker of the premises. He consented to a search of the premises, signing a consent-to-search form and producing the keys to the tractor trailer from the right pocket of the coat he was wearing. Escalon found, according to his estimate, approximately 650 pounds of marihuana in the tractor trailer.
Appellant testified at the trial on the merits for the limited purpose of establishing his "standing" to contest the legality of the search. He testified that the lessor of the ranch had given appellant permission to reside there in return for performing some caretaking duties. Appellant had been given authority to order trespassers off the ranch. He also was charged with mending the fence and looking after the cattle.
Appellant initially contends that the warrantless search of the ranch was illegal under the United States and Texas Constitutions, because the law enforcement officers entered without first securing a warrant. Recently, in United States v. Dunn, ___ U.S. ___, 107 S.Ct. 1184, 94 L.Ed.2d 326 (1987), the United States Supreme Court reaffirmed the "open fields" doctrine by holding that no violation of the fourth amendment occurred when law enforcement officers crossed several fences on the defendant's property to obtain a view of suspected illegal activity. The Court in Dunn followed the rule begun by Hester v. United States, 265 U.S. 57, 58, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924), and expanded by Oliver v. United States, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), that "there is no constitutional difference between police observations conducted while in a public place and while standing in the open fields." Dunn, ___ U.S. at ___, 107 S.Ct. at 1141. Neither is the technical trespass *910 of the officers in the case before us constitutionally significant. A trespass at common law is not the equivalent of a "search" in the constitutional sense. Oliver, 446 U.S. at 183, 104 S.Ct. at 1743. A warrant was therefore unnecessary as a prerequisite to the officers' entry on the ranch.
Appellant nevertheless contends that the "open fields" doctrine has been abandoned under Texas constitutional analysis in favor of a "legitimate expectation of privacy" test. However, appellant supports his argument only by citing Goehring v. State, 627 S.W.2d 159 (Tex.Crim.App.1982). Goehring, in dicta, had noted that some courts in other states had questioned the continued vitality of the "open fields" doctrine, in light of the "legitimate expectation of privacy" test enunciated in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Goehring dismissed those questions by reference to the postdate opinion in Air Pollution Variance Board v. Western Alfalfa Corp., 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974), which referred to the "open fields" doctrine in upholding observations of air pollution. Moreover, both Goehring and Katz were handed down before Oliver and Dunn, which both expressly relied on the "open fields" doctrine. Appellant's contention is without merit. See also Ochs v. State, 543 S.W.2d 355 (Tex.Crim.App.1976), cert. denied, 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778 (1977); Beasley v. State, 683 S.W.2d 132 (Tex.App.Eastland 1984, pet. ref'd); Hurwitz v. State, 673 S.W.2d 347 (Tex.App.Austin 1984), aff'd on other grounds, 700 S.W.2d 919 (Tex.Crim.App. 1985).
Appellant also questions the knowing and voluntary nature of his consent to search the ranch, once the officers had entered. Appellant contends that he only finished the sixth grade while living in Mexico, that he speaks very little English, and that he was confronted by several armed law enforcement officers. Under these circumstances, argues appellant, his apparent consent to search the premises merely amounted to a submission to a claim of lawful authority. See Meeks v. State, 692 S.W.2d 504, 509 (Tex.Crim.App.1985); demons v. State, 605 S.W.2d 567, 571 (Tex.Crim.App.1980); Paprskar v. State, 484 S.W.2d 731, 737 (Tex.Crim.App.1972).
Meeks v. State, 692 S.W.2d at 509-10, clearly sets out the standards for determining whether a defendant has waived his or her right, under the fourth amendment to the U.S. Constitution and article I, section 9, of the Texas Constitution, to be free from unreasonable searches and seizures. The State has the burden of proving by clear and convincing evidence that consent was given freely and voluntarily and that the consent given was positive and unequivocal, free from duress or coercion, either actual or implied. This burden cannot be discharged by showing nothing more than acquiescence to a claim of lawful authority. Such submission renders the search invalid. Whether a consent to search was voluntary presents a question of fact that must be determined from the totality of the circumstances.
In the first place, appellant's argument has only limited support in the record. No evidence was presented of the extent of appellant's education. Although he testified through an interpreter at trial, he told Officer Escalon at the scene of the arrest that he spoke English "fairly well."
Officer Escalon, at the hearing on the motion to suppress, testified that he told appellant he suspected the tractor trailer on the ranch contained marihuana. He continued as follows:
Q. What did you do next?
A. Then, I read him his rights, I sat him in the car. It was cold. I sat him in the car, and I talked to him as to why we were there. As far as the consent of the search, he was very cooperative, and that's when he signed the consent (form).
Q. Did you, in any way, tell him as to whether or not he gave consent, giving *911 you consent to search that trailer?
A. I did tell him that the place was going to be searched, either by his consent, or that later, we would come back and check the place.
Q. All right. And was he cooperative?
A. Yes, sir, he was.
Q. Was he very cooperative?
A. I would say very cooperative, yes, sir.
Appellant then stated that he had the keys to the padlock on the tractor trailer. After signing the written consent form, appellant walked over and opened the padlock for the officers. Escalon also testified that appellant was twice given his rights, in English and in Spanish, and that appellant was "very cooperative." No other witnesses testified on the issue of consent.
At trial, Officer Escalon's testimony was the same. However, he added that, while the two were talking in the police car, appellant told him that there was marihuana in the tractor trailer. He even started to go open it up, but Escalon asked him to wait until he had written out the consent form.
The fact that a person is under arrest or in custody does not alone render a consent involuntarily given. It is merely one of the circumstances to be considered. United States v. Watson, 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976); United States v. Hall, 565 F.2d 917, 920 (5th Cir.1978); United States v. Jones, 475 F.2d 723, 729-30 (5th Cir.1973); Meeks, 692 S.W.2d at 510; Valerio v. State, 494 S.W.2d 892, 987 (Tex.Crim.App.1973). Nor is mere acquiescence to a claim of lawful authority to be inferred from the statement that the officers would get a search warrant if he did not consent. See United States v. Boukater, 409 F.2d 537, 538-39 (5th Cir.1969); Resendez v. State, 523 S.W.2d 700, 703 (Tex.Crim.App.1975); Stephenson v. State, 494 S.W.2d 900, 905 (Tex.Crim.App.1973). Viewing the evidence from the standpoint most favorable to the trial court's determination, we hold that Officer Escalon's testimony is sufficiently clear and convincing to establish the voluntariness of appellant's consent. See Stephenson, 494 S.W.2d at 905.
Appellant also contends that no exigent circumstances existed to justify the officers' warrantless search of the ranch. In view of our foregoing conclusion that appellant gave consent to search once the officers were lawfully on the premises, we need not address this point. Tex.R.App.P. 90(a).
Appellant contends, in his first point of error, that reversible error occurred in the trial court's failure to sign a stipulation of evidence. Counsel for appellant and the State stipulated on the record that, if a certain chemist from the Texas Department of Public Safety testified, he would testify that the substance he tested was marihuana, and that it weighed 617 pounds. No written agreement to stipulate or consent to waive his right to confront witnesses appears in the record.
Tex.Code Crim.Proc.Ann. art. 1.15 (Vernon 1977) is a mandatory statute requiring that an agreement to stipulate evidence, and a waiver of the appearance, testimony, and confrontation of a witness, must be written and must be approved by the court. It is the consent and waiver which must be approved, not the stipulation itself. McClain v. State, 730 S.W.2d 739 (Tex. Crim.App.1987); Messer v. State, No. 570-84 (Tex.Crim.App., April 1, 1987) (opinion on motion for rehearing) (not yet reported); Landers v. State, 720 S.W.2d 538, 540 (Tex. Crim.App.1986).
The State concedes that it did not comply with article 1.15, arguing instead that the "live" testimony presented the trial court with independently sufficient evidence to support the conviction. Our authority to consider such evidence is implicit in the cases cited above. E.g. McClain v. State, *912 730 S.W.2d at 742-43.[1] At trial, Escalon testified that he had been an agent of the Department of Public Safety for eighteen years. He later stated that he was familiar with and could identify marihuana. Escalon also testified that he saw a white package being placed in the trunk of the orange Trans Am which had backed up to the tractor trailer. The packages were wrapped in the manner which marihuana is often packaged. After the Trans Am left the ranch, Escalon stopped it and discovered "several packages or bundles that appeared to be marihuana." He later stated that, in his opinion, those several packages contained about eighty pounds of marihuana. Escalon then testified that, when he searched the tractor trailer, he found "similar bundles of what appeared to be marihuana towards the front of the trailer bed" (emphasis added). Approximately fifty-four of these bundles were recovered from the tractor trailer. On cross-examination, he also testified that, based on his training, marihuana was seized from the Trans Am, and it was packaged the same as the "stuff" he later seized at the ranch.
Based on this testimony, the trial court, as trier of fact, could have determined from all of this evidence that, if the "several" packages in the Trans Am's trunk totalled near eighty pounds, then the fiftyfour "similar bundles" of marihuana in the tractor trailer totalled between 200 and 2000 pounds, as alleged in the indictment. We hold that this independent evidence was sufficient to support the conviction without the proper written stipulation.
We have carefully considered all of appellant's points of error, and they are overruled. The judgment of the trial court is AFFIRMED.
SEERDEN, Justice, dissenting.
I respectfully dissent. I fail to see adequate justification for Escalon's warrant less and illegal entry into the ranch and for the search resulting from the entry. A warrantless search is per se unreasonable. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). The burden is on the prosecution to establish the validity of a warrantless search or arrest. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1969); Gonzales v. State, 588 S.W.2d 355 (Tex.Crim.App. 1979). A warrantless search must be strictly circumscribed by the exigencies which justify its initiation. Bass v. State, 732 S.W.2d 632 (Tex.Crim.App.1987).
At trial, Escalon stated he proceeded without a warrant because he was concerned that if the arrest of the driver of the Trans-Am had been seen, the narcotics could be being destroyed. He stated that by his information, 1000 pounds of marihuana were to be at the ranch, and only about 80 pounds had been seized from the Trans-Am. However, he also testified that he had participated in burning 1000 pounds of marihuana, and it took 2-4 hours. He also testified that after the arrest of the driver of the Trans-Am, he sent an officer to observe at the gate of the ranch. When his backups had arrived and he went to the gate, this officer informed him that no one had come or gone and no activity had been observed on the ranch. Escalon conceded that at that time, he had no reason to believe marihuana was being destroyed. Nevertheless, he then entered the ranch by force.
Escalon testified that the events occurred on February 1, 1985 (a Friday), and that appellant was arrested before noon. He also testified that it was about 5 miles to the magistrate's office in Mercedes, and that magistrates were also in Edcouch and in Weslaco, 8 to 10 miles away.
The mere presence of destructible, incriminating evidence does not create exigent *913 circumstances. United States v. Munoz-Guerra, 788 F.2d 295, 298 (5th Cir. 1986). Moreover, the "exigent circumstances" urged by Escalon were clearly of his own making. Thus, he cannot rely on them to avoid obtaining a warrant. See United States v. Thompson, 700 F.2d 944, 950 (5th Cir.1983).
In his second point of error, in addition to complaining that the search was illegal under the United States and Texas constitutions, appellant contends that the evidence was obtained "in violation of state law." In his argument, he cites Tex.Code Crim. Proc.Ann. art. 38.23, as well as both United States and Texas constitutional provisions.
The "open fields" doctrine argued by the State and approved by the majority has no application in this case. Without regard to whether the trailer which was the focus of the search was part of the "curtilage" or part of the "open fields," the actions of the peace officers in gaining entry to the premises were clearly in violation of the laws of the State of Texas.
Tex.Penal Code Ann. § 30.05(a)(1) (Vernon Supp.1987) provides that a criminal trespass occurs if a person enters or remains on property without effective consent of the owner and he has notice that entry was forbidden. "Notice" includes fencing or other enclosure obviously designed to exclude intruders or to contain livestock. Tex.Penal Code Ann. § 30.05(b)(2)(B) (Vernon Supp.1987). See Johnson v. State, 672 S.W.2d 621, 623-24 (Tex. App.Corpus Christi 1984, no pet.). Escalon testified that on the right-hand side of the gate, right where he cut the chain securing the gate, was a sign stating "Keep Out," and at the opposite end of the wire gap another sign said "No Trespassing." Clearly, Escalon's entry upon the small ranch was more than a "technical trespass;" it was a clear violation of Texas' criminal trespass statute.
A "technical trespass" is a forseeable and harmless violation of civil or common law, not a violation of criminal law.
Tex.Code Crim.Proc. art. 38.23 provides: "No evidence obtained by any officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."
This statutory exclusionary rule has been the law of the State of Texas since June, 1925. See Brown v. State, 657 S.W.2d 797, 802-07 (Tex.Crim.App.1983) (Clinton, J., concurring); Howard v. State, 617 S.W.2d 191 (Tex.Crim.App.1979); Odenthal v. State, 106 Tex.Cr.R. 1, 290 S.W. 743 (Tex. Crim.App.1927); Dees v. State, 722 S.W.2d 209 (Tex.App.Corpus Christi 1986, pet. filed).
United States v. Dunn, ___ U.S. ___, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), cited by the majority, is not applicable in this instance because it is a case arising under federal law in a Federal District Court using Federal Rules of Procedure. State law, not federal law, governs the legality of arrests and searches so long as that law does not violate federal constitutional protections. See Ker v. California, 374 U.S. 23, 31, 83 S.Ct. 1623, 1628, 10 L.Ed.2d 726 (1963); Milton v. State, 549 S.W.2d 190, 192 (Tex.Crim.App.1977); Pope v. State, 695 S.W.2d 341, 343 (Tex.App.Houston [1st Dist.] 1985, pet. ref'd).
As to the seizure of appellant, Escalon testified that, when he viewed the transaction on the ranch before entering, he could not distinguish the actors' characteristics sufficiently to identify them.
I further do not believe that the State met its burden of proving voluntary consent so as to validate the initial illegal intrusion. Rather, the intrusion was a coercive factor in obtaining the consent. Escalon stated that about five officers, presumably armed, with a marked vehicle, entered, and that the place was "secured" in about five minutes. Appellant signed the consent after having been given Miranda warnings and while in a police vehicle. Escalon admitted that appellant was in custody, and that he told appellant that the place would be searched whether he consented or *914 not. Neither he nor the other officers said anything about a search warrant.
Where the validity of a search rests on consent, the State has the burden of proving by clear and convincing evidence that the consent was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority. Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); Meeks v. State, 692 S.W.2d 504, 509-10 (Tex.Crim.App.1985).
Whether consent was voluntary is determined from the totality of the circumstances. If appellant concluded a search was inevitable with or without his consent, this would render the consent invalid even if the consent were not tainted by the illegality of the initial entry and resulting seizure of appellant. See Daniels v. State, 718 S.W.2d 702, 707 (Tex.Crim.App.1986). I would hold that the contraband should not have been admitted into evidence and the trial court should have granted appellant's motion to suppress the evidence.
NOTES
[1] In McClain, the Court of Criminal Appeals wrote,

"[A]ppellants' convictions must be reversed because the evidence, which consists solely of the stipulations, is, without the stipulations, insufficient.... We hold that without the stipulated evidence, which is all of the evidence presented in the trial court, the evidence is insufficient to support the convictions."