

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CHRISTOPHER IAN O'BRIEN, | § | No. 08-14-00221-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law |
| THE STATE OF TEXAS, | § | of Terrell County, Texas |
| Appellee. | § | (TC# 1877) |
| | § | |

## **O P I N I O N**

Appellant Christopher O'Brien, his brother Jacob O'Brien, and their friends Seth Winkler and Tyler Bumpers went on a successful hunting trip and returned home with the heads of two aoudad sheep. They posted pictures of their bounty on Facebook. Unfortunately, their hunting trip occurred on the property of Nathan Pickett, who, Appellant admitted, had not given them permission to hunt. Appellant claimed Seth Winkler told him Seth's father owned the property and had given them permission to hunt. The jury disbelieved Appellant's assertion and found him guilty of hunting an exotic animal on Pickett's land without his express consent, and guilty of criminal trespass and criminal trespass while carrying a deadly weapon.[1] The trial court

---

[1] Jacob O'Brien was also charged with these offenses, and the cases against the brothers were prosecuted in a single

sentenced Appellant to 180 days' in jail and imposed a $1,000 fine and $2,000 in restitution.

Appellant contends on appeal that that the trial court erred in admitting into evidence two photographs from a game camera showing Appellant, his brother, and his friends on Pickett's property. He also contends the evidence is insufficient to support the jury's verdict. We conclude the trial court did not abuse its discretion in admitting the photographs into evidence and that the evidence is sufficient to support the verdict. We affirm the trial court's judgment.

## BACKGROUND

Nathan Pickett purchased a 300-acre parcel of land in Terrell County from Joan Winkler in April 2011. The property included a cabin, running water, multiple deer blinds, and motorized game feeders. Aoudad sheep had been found on the property since 2012. The property lies more than 20 miles from the nearest highway. The final 10 miles is across a private road, which is guarded by a closed gate marked with a "no trespassing" sign. Pickett's property in particular is guarded by fencing and a locked front gate bearing a "no trespassing" sign that is marked with the name "Pickett." Numerous other signs also warn against trespassing or hunting on the property, some of which also colorfully warn: "Trespassing may induce lead poisoning," "Security provided by Ruger," and "Trespassers will be shot. Survivors will be shot again."

Pickett visited his property about once a month. During a Memorial Day weekend trip to the property in 2013, Pickett installed a game camera. During a subsequent visit in August, Pickett discovered the lock on the entry gate had been shot and was inoperable. Pickett discovered tire tracks heading around the gate and found that someone had moved the tire spikes and the boulders that had been installed to prevent vehicles from driving around the gate. Because it was impossible to open the gate, Pickett was forced to drive around the gate, following

trial.

2

the newly-discovered tire tracks, in order to travel the remaining quarter mile to his cabin. As soon as his cabin came into view, Pickett discovered the carport gate and gatepost had been knocked down. He also discovered that a striped retractable sun awning had been crudely cut away with a knife. Pickett found drink bottles and empty food cans on the patio and saw that the patio furniture had been moved and firewood had been used. In the fire pit, Pickett located spent shell casings from a 30.06 rifle and a .45 caliber automatic colt pistol, which are not guns he owns.

Pickett had his son retrieve the data card from the game camera and began reviewing the captured images. Pickett found two images depicting four unknown men. Both photographs were date stamped July 6, 2013, and were admitted into evidence as State's Exhibits 1 and 2, respectively. Pickett testified he did not know Christopher O'Brien, Jacob O'Brien, Seth Winkler, or Tyler Bumpers, and that he had not given them permission to be on his property or to hunt exotic animals or aoudad sheep on his property. Pickett shared the game camera photographs with Joan Winkler, Seth's mother, in the hope that she may recognize the men in the images. Joan Winkler informed Pickett that her son Seth was among the men in the photographs, and according to Pickett, told him that Seth knew that the property had been sold.

Pickett provided the photographs from the game camera to Texas Parks and Wildlife Game Warden Arnold Pinales and reported that photographs depicted trespassers who had been poaching on his property without his consent. Warden Pinales testified that aoudad sheep are considered exotic game, and a regular hunting license is required to legally hunt an exotic animal. In an effort to identify the offenders, the photographs were posted online in hunting and fishing forums and on Facebook. Pickett gave Warden Pinales the name of Seth Winkler as a possible suspect. Warden Pinales eventually determined that Appellant, Jacob O'Brien, Seth Winkler, and Tyler

3

Bumpers were the four men depicted in the photographs from Pickett's game camera.

Warden Pinales found a Facebook account for Appellant that displayed images of Appellant and Seth Winkler at Pickett's cabin posing with the aoudad heads. Appellant's Facebook images matched his image found in the game camera photos. Both sets of images showed the distinctive tattoos on Appellant's arms as well as Appellant wearing a white shirt bearing the phrase "Follow the Leader." Warden Pinales was also provided three photos from an anonymous source. The first image depicts two aoudad heads laying on the striped sun awning cut down from Pickett's property, the second image shows Appellant wearing the white "Follow the Leader" shirt and holding an aoudad head, and the third image shows a hand-made poster bearing the message:

Hunting on "Dad's" property.
$$ Wanted $$
Seth Winkler and Chris O'Brien.

Appellant admitted at trial that he had hunted and killed an aoudad on Pickett's property without his consent. He also admitted that he was one of the individuals in the game camera photos and that everything shown in the photographs was "completely true." But Appellant asserted Seth Winkler had informed him that the property belonged to Winkler's father.[2] Appellant claimed that if Seth had informed him that his father did not own the property, he would have never gone hunting on the property.

Appellant testified that after driving six or seven hours in Appellant's truck with Seth navigating, they arrived at the property late at night. Appellant testified that they accessed the property from its southeast corner along the rugged "back drive," which Seth said was the original

---

[2] Appellant's mother testified that she was present when Seth and Appellant were planning the hunting trip and Seth informed her that the property belonged to Seth's father and that he had permission to hunt on the property at any time.

4

drive used when they were building the cabin. Appellant denied that there were any fences, gates, or "no trespassing" signs on the south side of the property, and claimed he never saw any signs bearing Pickett's name. Appellant said he was convinced from the moment he set foot on the property that it was Seth's father's property, because it was exactly as Seth had described. Appellant admitted, however, that "I was a little uncertain because, you know, a story could be too – you know, too good to be true at times."

According to Appellant, the following day after the hunt, they drove out of the property the opposite way toward the front gate. When they reached the front gate, Appellant for the first time noticed a "no trespassing" sign, but he did not believe the sign had Pickett's name on it. Appellant testified that Seth Winkler had told him before they left on the hunting trip that he had a set of keys to the front gate. But when they arrived at the front gate, Seth informed him they would have to drive around it because he didn't have the keys to open the gate. Appellant concluded "after the fact" that "there were never any keys." Appellant claimed that to get out, he drove his truck around and over the boulders by the front gate and did not move them, noting that his truck had a six-inch lift kit and went right over the boulders.

Appellant admitted that they left trash on the property. He also admitted that the carport gate had been moved and that he was "accountable" even though he did not touch the gate but merely backed up his truck into the carport to unload gear. He also stated that when they were loading the aoudad heads into the back of his truck, Seth pulled or cut down the striped sun awning because, Seth said, his father was going to replace it anyway. He denied that the striped sun awning was used to cover the aoudads' heads to prevent their detection on the return trip, but rather Seth did not want Appellant's truck bed to get bloody. Appellant testified that he had borrowed

5

the 30.06 and a 9 millimeter pistol for the hunt.   Appellant acknowledged that an exotic aoudad hunt would normally cost approximately $1,500 or more, but he did not see any problem with hunting at no cost on what he believed was the property of Seth's father.   Appellant admitted that he had posted a photograph on Facebook of himself and Seth holding two aoudad heads with the caption, "Got 'em."   After learning that there were warrants out for his arrest, Appellant turned himself in and informed the game warden that Seth was in possession of the heads.   Appellant asserted that Seth kept both aoudad heads after the hunt, but could not explain why only one head was found at Seth's house.

Pickett testified on rebuttal that there is a gate on the southeast side of his property that is always locked.   He also explained that it would have been impossible for a vehicle to reach his cabin from the southeast due to a massive, 200-foot deep canyon located between the southeast gate and the cabin.

## DISCUSSION

### Admission of the Photographs

In Issue One, Appellant contends the trial court erred in admitting the two game camera photographs showing his presence on the property (State's Exhibits 1 and 2) because they were not properly authenticated and because their admission violated his Sixth Amendment right to confrontation.   We conclude that later-admitted evidence authenticated the photographs and rendered any error in their admission harmless, and that Appellant failed to preserve his argument that their admission violated his right to confrontation.

### *Applicable Law and Standard of Review*

Authentication is a condition precedent to admissibility of evidence.   *Tienda v. State*, 358

6

S.W.3d 633, 638 (Tex.Crim.App. 2012). To properly authenticate evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). The trial court decides the threshold question whether the proponent has supplied sufficient evidence to support a reasonable jury determination that the proffered evidence is authentic. *Tienda*, 358 S.W.3d at 638; TEX. R. EVID. 104(a) (whether to admit evidence is a preliminary question to be decided by the court). In performing its gate-keeping function, the trial court need not be persuaded that the proffered item of evidence is authentic. *Tienda*, 358 S.W.3d at 638. The trial court must only decide whether the proponent has supplied facts sufficient to support a reasonable jury determination that the evidence is authentic. *Id.* The ultimate question whether an item of evidence is what its proponent claims is a question for the jury. *Id.*

We review a trial court's ruling on the preliminary question of admissibility for abuse of discretion. *Id.* We will not interfere with a trial court's ruling that a jury could reasonably find the proffered evidence is authentic if the ruling is within the zone of reasonable disagreement. *Id.*

*Analysis*

Appellant contends the trial court abused its discretion because the photographs were not properly authenticated prior to admission. The photographs were offered through Warden Pinales who admitted that Pickett had retrieved the images from the game camera and provided them to him and that he was not present when the pictures were taken or subsequently developed. Appellant argues that Warden Pinales had no personal knowledge of how the photographs were taken, what equipment was used to take them, whether that equipment was in good-working order, whether the photographs were a true and correct depiction of what came from the camera's digital

7

information card, or whether the photographs had been manipulated in any manner. There is no requirement, however, that the individual authenticating a photograph have been the photographer or present when the photograph was taken or developed. *Pena v. State*, 467 S.W.3d 71, 75 (Tex.App. – San Antonio 2015, no pet.). All that is required for authentication is testimony that the photograph accurately represents the person, object, or scene depicted in the photograph. *See Delacerda v. State*, 425 S.W.3d 367, 393 (Tex.App. – Houston [1st Dist.] 2011, pet. ref'd); *see also Huffman v. State*, 746 S.W.2d 212, 221-22 (Tex.Crim.App. 1988).

Appellant correctly points out that Warden Pinales did not testify that the photographs accurately represented the persons, objects, or scene depicted before the photographs were admitted into evidence. Evidence prematurely admitted in error, however, may become admissible or be rendered harmless by subsequent evidence. *James v. State,* 102 S.W.3d 162, 175 (Tex.App. – Fort Worth 2003, pet. ref'd). "A conviction will not be reversed for error in receiving evidence that was not admissible when received but which became admissible at a subsequent stage." *Romo v. State,* 700 S.W.2d 633, 634 (Tex.App. – Houston [14th Dist.] 1985, no pet.). Any error in admitting photograph into evidence without proper authentication is cured when a witness later testifies that he was present when photograph was taken. *Davis v. State*, 687 S.W.2d 78, 82 (Tex.App. – Dallas 1985, pet. ref'd). After the trial court had admitted the photographs depicting Appellant's presence on Pickett's property, Appellant admitted that he was present and had hunted on Pickett's property without his consent in July 2013 and that everything shown in the photographs was "completely true." These subsequent admissions by Appellant

8

both provided the necessary evidence to authenticate the photographs and rendered any error in their admission harmless.[3]

Appellant also contends, for the first time on appeal, that the Sixth Amendment's Confrontation Clause barred admission of the photographs. The Confrontation Clause bars the admission of out-of-court testimonial statements by a declarant whom the criminal defendant has been unable to confront. *Crawford v. Washington*, 541 U.S. 36, 50-51, 68, 124 S.Ct. 1354, 1364, 1374, 158 L.Ed.2d 177 (2004). Appellant argues the photographs are testimonial because Warden Pinales's knowledge of the photographs was based solely on information supplied by Pickett. Both Warden Pinales and Pickett testified at trial, however. They were therefore available to be confronted at trial, and were in fact cross-examined by defense counsel. In any event, a photograph is not an out-of-court testimonial statement, and thus its admission cannot violate the Confrontation Clause. *Herrera v. State,* 367 S.W.3d 762, 773 (Tex.App. – Houston [14th Dist.] 2012, no pet.) (autopsy photograph is not a testimonial statement); *Wood v. State,* 299 S.W.3d 200, 214-15 (Tex.App. – Austin 2009, pet. ref'd); TEX. R. EVID. 801(a) (a "statement" is an oral or written verbal expression, or nonverbal conduct intended by the person as a substitute for verbal expression). More importantly, Appellant has waived any error by failing to raise a Confrontation Clause objection at trial. Appellant objected to admission of the photographs solely based on the lack of proper authentication under the rules of evidence. An objection based on the Rules of Evidence does not preserve error on Confrontation Clause grounds. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex.Crim.App. 2005). When the legal basis of a trial objection

---

[3] There was also other circumstantial evidence showing that State's Exhibits 1 and 2 accurately depicted Appellant and the property. Pickett testified that State's Exhibits 1 and 2 were taken by the game camera he had installed and showed a date stamp of July 6, 2013. Also Warden Pinales testified that he had had taken photographs of Pickett's property from the same vantage point as State's Exhibits 1 and 2 and that his photographs fairly and accurately depicted Pickett's property.

differs from that on appeal, the issue is not preserved for our consideration. *See Lovill v. State*, 319 S.W.3d 687, 691 (Tex.Crim.App. 2009); *see Clark v. State*, 365 S.W.3d 333, 339 (Tex.Crim.App. 2012); *see also Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex.Crim.App. 2014), *cert. denied*, 135 S.Ct. 1158 (2015) (failure to object at trial may waive even errors of constitutional magnitude). We overrule Issue One.

## Sufficiency of the Evidence

In his second issue, Appellant contends the trial court erred in failing to grant his motion for directed verdict because the State failed to prove the elements necessary to support his conviction for hunting an exotic animal on Pickett's land without his express consent and for criminal trespass while carrying a deadly weapon.[4] A challenge to a trial court's ruling on a motion for directed verdict is actually a challenge to the sufficiency of the evidence to support the conviction. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App. 1990).

### *Standard of Review*

We review sufficiency complaints under the legal-sufficiency standard enunciated in *Jackson v. Virginia. Fernandez v. State,* 479 S.W.3d 835, 837 (Tex.Crim.App. 2016); *Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Fernandez,* 479 S.W.3d at 837–38 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). If a rational fact finder could have so found, we will not disturb the verdict on appeal. *Id*. at 838; *see also Temple v. State,* 390 S.W.3d 341, 363 (Tex.Crim.App. 2013).

---

[4] The information also charged Appellant with simple criminal trespass. The jury found Appellant guilty of all the charges. But the trial court set aside the verdict regarding the simple criminal trespass allegation.

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Dobbs v. State,* 434 S.W.3d 166, 170 (Tex.Crim.App. 2014). The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Id.* at 170 (citing *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789). When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Id.*; *see also Clayton v. State,* 235 S.W.3d 772, 778 n.12 (Tex.Crim.App. 2007) (observing that it is the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

### *The State's Burden*

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Miles v. State,* 357 S.W.3d 629, 631 (Tex.Crim.App. 2011) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997)). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* The Texas Parks and Wildlife Code provides that: "No person may hunt on the land of another for an exotic animal without the express consent of the owner of the land to hunt for exotic animals." TEX. PARKS & WILD. CODE ANN. § 62.015(c) (West 2002). The first count of the information alleges Appellant "did then and there intentionally and knowingly hunt an exotic animal on the land of another, to-wit: Nathan Pickett in Terrell County, Texas, without the express consent of Nathan Pickett." Under a hypothetically correct charge, the State was required to prove beyond a

11

reasonable doubt that Appellant intentionally and knowingly hunted an exotic animal on Nathan Pickett's land without his express consent.

The Texas Penal Code provides that a person commits criminal trespass if the person enters or remains on or in property of another without effective consent, and the person had notice that the entry was forbidden.  TEX. PENAL CODE ANN. § 30.05 (a)(1) (West Supp. 2016).  Criminal Trespass is a Class B misdemeanor but is elevated to a Class A misdemeanor if the person carries a deadly weapon during the commission of the offense.  *Id*. at § 30.05(d)(1), (3)(B) (West Supp. 2016).  Notice that the entry was forbidden can be given by fencing or other enclosure obviously designed to exclude intruders or to contain livestock, or a sign or signs posted on the property indicating that entry is forbidden that are reasonably likely to come to the attention of intruders. TEX. PENAL CODE ANN. § 30.05(b)(2)(B, C) (West Supp. 2016).  The second count of the information alleged that Appellant "did then and there intentionally and knowingly enter on property of another, to-wit: Nathan Pickett, without the effective consent the owner, Nathan Pickett, and the said Defendant had notice that the entry was forbidden, and during the commission of the offense of criminal trespass, the said Defendant carried a deadly weapon."  Under a hypothetically correct charge, the State was required to prove beyond a reasonable doubt that Appellant intentionally and knowingly entered on Pickett's property without his consent and with notice that the entry was forbidden, and carried a deadly weapon during the commission of the offense.

### *Analysis*

Appellant's argument in his brief on sufficiency of the evidence simply sets out verbatim what he argued to the trial court in his motion for directed verdict.  Appellant's brief fails to

present any analysis of exactly how the evidence was insufficient.[5] Although the briefing is deficient, we will liberally construe Appellant's brief as attacking the sufficiency of all the elements of the two offenses.

Pickett's testimony established that he owned the property and that he had not given Appellant permission to enter or to hunt an exotic animal on his property. And Appellant admitted at trial that he entered Pickett's property, and hunted, shot, and killed an aoudad sheep on Pickett's property, without his permission. Aoudad sheep are statutorily defined as exotic animals. TEX. PARKS & WILD. CODE ANN. § 62.015(a) (West 2002). Appellant's position at trial was that his entry and hunting on Pickett's property without consent was not done intentionally or knowingly[6] because Seth Winkler had misinformed him that the property belonged to Winkler's father.

Appellant's position on intent was buttressed by his mother's testimony that Seth Winkler told her that the property belonged to Seth's father and that he had permission to hunt on the property at any time. Appellant claimed that if Seth had informed him that his father did not own the property, he would have never gone hunting on the property. While this testimony constitutes some evidence that Appellant may have lacked the necessary intent or knowledge, the mere existence of a reasonable alternative hypothesis does not render the evidence factually insufficient. *Goodman v. State,* 66 S.W.3d 283, 287 (Tex.Crim.App. 2001). Here, the jury heard other

---

[5] Concerning the first count, Appellant argues only that there was no evidence that he had taken an exotic animal from Pickett's property and broadly states that "the State has failed to prove each element." As to the criminal trespass count, Appellant argues only that the State failed to prove that he intentionally or knowingly entered the property without Pickett's consent or that he possessed a deadly weapon during the commission of the offense.

[6] A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct, when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2011). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. TEX. PENAL CODE ANN. § 6.03(b) (West 2011).

circumstantial evidence of mens rea from which they could reasonably conclude that Appellant knew that the property was not owned by Seth Winkler's father and had knowingly and intentionally entered and hunted for an exotic animal on Pickett's property without his consent.

Appellant claimed that they entered the property at night from the southeast corner and did not encounter any fences, locked gates, or "no trespassing" signs that would have alerted him that Pickett owned the property. But Pickett testified that entry and access to his cabin was impossible from the southeast and that his property was protected by fencing, locked gates, and numerous no trespassing signs, some of which—like the front gate—were marked with the name "Pickett." Pickett testified not only that access was impossible from the southeast corner but also that the lock on the front gate had been shot in an attempt to gain entry and that the rock barriers had been moved to gain access around the gate. The jury could have reasonably inferred from this evidence that the entire hunting party entered not from the southeast, but from the front gate, and knowing the property did not belong to Seth's father, attempted to destroy the lock to gain access, and then moved the barriers in order to drive around the front gate. Appellant also admitted that he and his companions left trash around the cabin, knocked down the carport gate and gatepost, and cut down the distinctive sun awning—actions the jury could have reasonably concluded were inconsistent with a claimed belief that the property was owned by Seth Winkler's father. The jury could have also concluded that the awning was used to cover up the aoudad heads from detection on the return trip, showing knowledge that the aoudad had been illegally hunted. From all this evidence, the jury could have rejected Appellant's assertion that he thought he had permission to enter the property and reasonably concluded that Appellant intentionally and knowingly entered and hunted an exotic animal on the property knowing it was not owned by Seth Winkler's father.

14

Proof of a culpable mental state generally relies upon circumstantial evidence. *Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Crim.App. 1978); *Knight v. State*, 457 S.W.3d 192, 199 (Tex.App. – El Paso 2015, pet. ref'd). Ordinarily, proof of a culpable mental state must be inferred from the acts, words, and conduct of the accused and the surrounding circumstances. *Ledesma v. State,* 677 S.W.2d 529, 531 (Tex.Crim.App. 1984); *Knight*, 457 S.W.3d at 199. And the jury was not required to believe Appellant's claims that he mistakenly believed that the property was owned by Seth's father and not by Pickett. The jury was free to believe some, all, or none of the testimony and other evidence presented. *See McFarland v. State,* 928 S.W.2d 482, 496 (Tex.Crim.App. 1996). In sum, the evidence was sufficient to negate Appellant's defensive theory of mistake and to show that Appellant's entry and hunting an exotic animal on Pickett's property without his consent was done both knowingly and intentionally.

Likewise the evidence was sufficient to establish that Appellant entered the property with notice that the entry was forbidden. First, the property was protected by fencing and a locked front gate, giving notice that entry was forbidden, and the jury could have reasonably concluded that Appellant and his companions entered the property through the front-gate and not from the southeast as claimed, and that after unsuccessfully attempting to shoot the lock off the front gate, they moved the rock barricades to gain entry. Second, the evidence also demonstrated that the property was protected by numerous "no trespassing" signs that were reasonably likely to come to the attention of intruders, some of which were marked with the "Pickett" name. Under the criminal trespass statute, either was sufficient to demonstrate that entry was forbidden. *See Jackson v. State*, 3 S.W.3d 58, 62 (Tex.App. – Dallas 1999, no pet.) (fencing around house was sufficient to provide notice that entry was forbidden); *Matter of D.L.K.*, 690 S.W.2d 654, 655

15

(Tex.App. – Eastland 1985, no pet.) (fencing and locked gates were sufficient to provide notice that entry was forbidden); *Leal v. State*, 736 S.W.2d 907, 913 (Tex.App. – Corpus Christi 1987), *pet. dism'd*, 773 S.W.2d 296 (Tex.Crim.App. 1989) (per curiam) (entry on ranch through locked gate bearing a "No Trespassing" sign, by cutting chain securing the gate, "was a clear violation of Texas' criminal trespass statute").

The evidence was also sufficient to show Appellant carried a deadly weapon during the commission of the criminal trespass. Appellant himself testified that he borrowed two firearms for the hunt and admitted that he shot and killed an aoudad sheep while on Pickett's property, establishing that he carried a deadly weapon when he entered the property.

In sum, the evidence was sufficient to negate Appellant's defensive theory of mistake and to show that Appellant knowingly and intentionally entered and hunted an exotic animal on Pickett's property without his consent, and entered with notice that the entry was forbidden, and carried a deadly weapon during the commission of his trespass. Having considered all the evidence in the light most favorable to the verdict, we conclude a rational juror could have found the essential elements of each offense beyond a reasonable doubt. We overrule Appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.

YVONNE T. RODRIGUEZ, Justice

January 25, 2017

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating

(Do Not Publish)

16